No. 11-3705

# *United States Court of Appeals*
### For The Seventh Circuit

**TEAMSTERS LOCAL UNION 705**, *et al.*,
*Plaintiffs-Appellants,*

**v.**

**BURLINGTON NORTHERN SANTA FE, LLC**, *et al.*,
*Defendants-Appellees.*

**On Appeal From the United States District Court for the Northern District of Illinois, No. 1:10-cv-07378 (Hon. Samuel Der-Yeghiayan)**

**BRIEF OF APPELLEES BURLINGTON NORTHERN SANTA FE, LLC; BURLINGTON NORTHERN SANTA FE CORPORATION; BNSF RAILWAY COMPANY; SANTA FE TERMINAL SERVICES, INC.; AND BERKSHIRE HATHAWAY INC.**

Donald J. Munro
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
E-mail: dmunro@jonesday.com

*Attorney for Defendants-Appellees
Burlington Northern Santa Fe, LLC,
Burlington Northern Santa Fe Corp., BNSF
Railway Company, Santa Fe Terminal
Services, Inc., and Berkshire Hathaway Inc.*

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>Seventh</u>

Short Caption: <u>Teamsters Local Union No. 705, et al. v. Burlington Northern Santa Fe, LLC, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1 .

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Berkshire Hathaway Incorporated, Burlington Northern Santa Fe, LLC (formerly known as Burlington Northern Santa Fe Corporation), BNSF Railway Company, Santa Fe Terminal Services, Inc.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Jones Day</u>

(3)    If the party or amicus is a corporation:

    i) Identify all its parent corporations, if any; and

<u>Santa Fe Terminal Services, Inc. no longer exists.  It was formerly a wholly owned subsidiary of BNSF Railway Company.  BNSF Railway Company is a wholly owned subsidiary of Burlington Northern Santa Fe, LLC (formerly known as Burlington Northern Santa Fe Corporation).  Burlington Northern Santa Fe, LLC is a wholly owned subsidiary of Berkshire Hathaway Inc., a  publicly held corporation.</u>

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>See 3(i)</u>

Attorney's Signature: <u>s/  Donald J. Munro</u>     Date: <u>08/15/2012</u>

Attorney's Printed Name: <u>Donald J. Munro</u>

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes <u>_X_</u> No <u>___</u>.

Address:  <u>Jones Day, 51 Louisiana Ave., N.W., Washington, D.C. 20001</u>

Phone Number: <u>(202) 879-3939</u>    Fax Number: <u>(202) 626-1700</u>

E-Mail Address: <u>dmunro@jonesday.com</u>

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................iii

JURISDICTIONAL STATEMENT ........................................... 1

STATEMENT OF THE ISSUES ............................................... 2

STATEMENT OF THE CASE ................................................. 3

STATEMENT OF FACTS ......................................................... 7

STANDARD OF REVIEW ...................................................... 10

SUMMARY OF ARGUMENT ................................................ 12

ARGUMENT ........................................................................... 15

I.   Former Employees of RTS Do Not Have a Viable Claim Under ERISA Against BNSF Railway ........................................ 15

    A.  Section 510 Prohibits Certain Means of Reducing Pension Expenses, Not the Termination of Supplier Contracts ................................................................... 15

    B.  Plaintiffs Failed to Allege any Material Participation by BNSF in the Decision of RTS to Terminate Its Employees .............................................................. 19

    C.  Plaintiffs Failed to Allege That BNSF Acted With Specific Intent to Deprive Them of Pension Benefits .......... 23

    D.  The *Inter-Modal* Decision Does Not Support the Employees' Claim Against BNSF In This Case ................... 29

II.  Former Employees of RTS Do Not Have a Viable Claim of Conspiracy Against BNSF Railway ............................................. 31

    A.  Plaintiffs' Allegations of Conspiracy Are Insufficient ......... 31

    B.  Plaintiffs' Conspiracy Claim is an Improper Attempt to Broaden the Scope of Section 510 of ERISA ....................... 33

    C.  Plaintiffs' New RICO Theory Should Be Rejected ............... 35

III. The Amended Complaint Failed to Allege Any Claim Against BNSF's Corporate Parents ............................................... 36

IV.  Local 705 Cannot Bring ERISA Claims on Its Own Behalf .......... 39

CONCLUSION ....................................................................... 41

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aaron v. Aguirre*,
No. 06-CV-1451, 2007 U.S. Dist LEXIS 16667 (S.D. Cal. Mar. 8, 2007) ........................................................................................ 39

*Abcarian v. McDonald*,
617 F.3d 931 (7th Cir. 2010) .............................................................. 10

*Alexander v. Rush North Shore Medical Center*,
101 F.3d 487 (7th Cir. 1996) ............................................................. 20

*Andes v. Ford Motor Co.*,
70 F.3d 1332 (D.C. Cir. 1995) ..................................................... 17, 27

*APS Sports Collectibles, Inc. v. Sports Time, Inc.*,
299 F.3d 624 (7th Cir. 2002) ............................................................. 37

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) ............................................................. 35

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................... 10, 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................... 10

*Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*,
277 F.3d 882 (7th Cir. 2001) ...................................................... 18, 24

*Bressner v. Ambroziak*,
379 F.3d 478 (7th Cir. 2004) ...................................................... 31, 35

*Byrd v. MacPapers, Inc.*,
961 F.2d 157 (11th Cir. 1992) ........................................................... 19

*Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
   230 F.3d 934 (7th Cir. 2000) ................................................................ 37

*Clark v. Resistoflex Co.*,
   854 F.2d 762 (5th Cir. 1988) ................................................................ 19

*Conkwright v. Westinghouse Elec. Corp.*,
   933 F.2d 231 (4th Cir. 1991) ................................................................ 16

*Corazon v. Aurora Loan Servs.*,
   Case No. 11-00542, 2011 U.S. Dist. LEXIS 52712 (N.D. Cal.
   May 5, 2011) ........................................................................................ 38

*County of McHenry v. Insurance Co. of the West*,
   438 F.3d 813 (7th Cir. 2006) ................................................................ 36

*Crawford v. TRW Auto. U.S. LLC*,
   560 F.3d 607 (6th Cir. 2009) ................................................................ 27

*Deeming v. American Standard, Inc.*,
   905 F.2d 1124 (7th Cir. 1990) ........................................................ 18, 19

*Dister v. Continental Group, Inc.*,
   859 F.2d 1108 (2d Cir. 1988) ............................................................... 17

*Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*,
   593 F.3d 507 (7th Cir. 2010) ................................................................ 11

*Esmark, Inc. v. NLRB*,
   887 F.2d 739 (7th Cir. 1989) ................................................................ 37

*Feinberg v. RM Acquisition, LLC*,
   629 F.3d 671 (7th Cir. 2011) ................................................................ 19

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ..................................................... 39

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ............................................................................. 34

*Havey v. Tenneco Packaging, Inc.*,
    No. 98 C 7137, 2000 U.S. Dist. LEXIS 1694 (N.D. Ill. Feb. 10,
    2000) ................................................................................................. 20

*Hickey v. O'Bannon*,
    287 F.3d 656 (7th Cir. 2002) ............................................................. 7

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990) ......................................................................... 16

*Inter-Modal Rail Ass'n v. Atchison, Topeka & Santa Fe Railway*,
    520 U.S. 510 (1997) ........................................ 13, 16, 17, 29, 30, 32, 37, 39

*Inter-Modal Rail Ass'n v. Atchison, Topeka & Santa Fe Railway*,
    80 F.3d 348 (9th Cir. 1996), *vacated by*, 520 U.S. 510 (1997) ............ 29

*Isbell v. Allstate Ins. Co.*,
    418 F.3d 788 (7th Cir. 2005) ...................................................... 18, 27

*Jakimas v. Hoffman-La Roche, Inc.*,
    485 F.3d 770 (3d Cir. 2007) ............................................................. 17

*Jennings v. Emry*,
    910 F.2d 1434 (7th Cir. 1990) ......................................................... 28

*Kampmier v. Emeritus Corp.*,
    472 F.3d 930 (7th Cir. 2007) ........................................................... 24

*Lindemann v. Mobil Oil*,
    141 F.3d 290 (7th Cir. 1998) .................................................. 18, 23, 24

*Magnus v. St. Mark United Methodist Church*,
    No. 10 C 380, 2010 U.S. Dist. LEXIS 111152 (N.D. Ill. Oct. 19,
    2010) ........................................................................................... 19, 23

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) ........................................................... 11

*McGath v. Auto-Body N. Shore, Inc.*,
    7 F.3d 665 (7th Cir. 1993) ............................................................... 19

*Meredith v. Navistar Int'l Transp. Corp.*,
935 F.2d 124 (7th Cir. 1991).........................................................17, 24

*Mitchell v. Archibald & Kendall, Inc.*,
573 F.2d 429 (7th Cir. 1978)................................................................ 36

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992) ............................................................................. 20

*Nauman v. Abbott Labs.*,
669 F.3d 854 (7th Cir. 2012)................................................................ 16

*Otto v. Variable Annuity Life Ins. Co.*,
814 F.2d 1127 (7th Cir. 1986)............................................................. 31

*Phelps v. Parsons Technical Support, Inc.*,
2:09-0327, 2010 U.S. Dist. LEXIS 116197 (S.D. Ind. Oct. 29,
2010) ..................................................................................................... 24

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v.
Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011)................................................................ 32

*Place v. Abbott Labs, Inc.*,
938 F. Supp. 1373 (N.D. Ill. 1996)...................................................... 20

*Salus v. GTE Directories Service Corp.*,
104 F.3d 131 (7th Cir. 1997)................................................................ 28

*Schweitzer v. Teamsters Local 100*,
413 F.3d 533 (6th Cir. 2005)................................................................ 16

*Southern Ill. Carpenters Welfare Fund v. Carpenters Welfare
Fund of Ill.*,
326 F.3d 919 (7th Cir. 2003)................................................................ 40

*Specht v. Google, Inc.*,
660 F. Supp. 2d 858 (N.D. Ill. 2009).................................................. 38

*Stanard v. Nygren*,
658 F.3d 792 (7th Cir. 2011)................................................................ 35

*Swanson v. Citibank,*
    614 F.3d 400 (7th Cir. 2010) ................................................. 11

*Teumer v. General Motors Corp.,*
    34 F.3d 542 (7th Cir. 1994) ................................................... 24

*Tingey v. Pixley-Richards West, Inc.,*
    953 F.2d 1124 (9th Cir. 1992) ......................................... 20, 30

*Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP,*
    475 F.3d 824 (7th Cir. 2007) .......................................... 10, 25

*Vicom, Inc. v. Harbridge Merch. Servs.,*
    20 F.3d 771 (7th Cir. 1994) ................................................... 28

## STATUTES

29 U.S.C. § 1002(7) ................................................................ 40

29 U.S.C. § 1002(8) ................................................................ 40

29 U.S.C. §§ 1132(a)(1)(B) .................................................... 39

29 U.S.C. § 1140 ......................................................... 2, 3, 12, 15

29 U.S.C. § 1144(a) ................................................................ 33

## OTHER AUTHORITIES

Fed. R. App. P. 4(a)(1) ............................................................. 6

Fed. R. Civ. P. 12(b)(6) ............................................................. 4

Fed. R. Civ. P. 23(a) ............................................................... 40

Fed. R. Civ. P. 23(b)(2) ........................................................... 40

# JURISDICTIONAL STATEMENT

The jurisdictional statement of the appellants is complete and correct.

## STATEMENT OF THE ISSUES

1.     Did the District Court correctly conclude that a group of former employees of Rail Terminal Services, Inc. ("RTS") do not have a viable claim under § 510 of ERISA, 29 U.S.C. § 1140, against a former RTS customer, BNSF Railway ("BNSF")?

2.     Did the District Court correctly conclude that former RTS employees do not have a viable claim of common law conspiracy against BNSF?

3.     Did the District Court correctly conclude that former RTS employees failed to plead a valid cause of action against the corporate parents and affiliates of BNSF?

4.     Does a labor union have a right to bring claims on its own behalf under § 510 of ERISA?

## STATEMENT OF THE CASE

This is an ERISA case.  Six former employees of RTS brought a putative class action against BNSF and its corporate parents and affiliates.  They alleged that BNSF's decision to end its rail services contract with RTS resulted in the termination of their employment with RTS.[1]  Appellants' Short Appendix ("App.") at 11-12.  The RTS employees alleged that this violated § 510 of ERISA, 28 U.S.C. § 1140, because it interfered with their pension expectations.  App. at 17-18.  They also alleged that BNSF had "conspired" with the other defendants to violate the former RTS employees' § 510 rights.  *Id.* at 19.  Finally, they alleged that the defendants' actions violated § 511 of ERISA (the criminal analogue to § 510).  *Id.* at 17-19.

In addition to the six former RTS employees, their labor union, Teamsters Local 705, was also a named plaintiff.  The Amended Complaint did not distinguish between the claims of the individual plaintiffs and Local 705.  *Id.* at 13.

---

[1]     The former RTS employees brought the same claims against RTS and its corporate parents, including Rail Management Services, LLC, and Carrix, Inc. The Amended Complaint, filed on January 18, 2011, added the Transportation Communications International Union ("TCIU") as a defendant.  Both TCIU and RTS (and its related companies) are represented by separate counsel and are filing separate briefs, so we do not address the issues relating to those defendants.

All of the defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  BNSF argued that, as a matter of law, its decision to terminate its contract with RTS did not give rise to liability under § 510 to the former RTS employees or their union.  More specifically, the railroad argued that there was no allegation that BNSF had played any role in the decision to terminate the RTS workers' employment (as opposed to the decision to terminate the RTS contract).  BNSF further argued that the plaintiffs had failed to allege that the railroad had any obligation to contribute to any RTS employee pensions, and thus could not allege any specific intent on the part of BNSF to reduce or eliminate the plaintiffs' pensions.

BNSF also argued that civil conspiracy cannot be used to broaden the scope of § 510, and that, in any event, plaintiffs had failed to adequately allege a conspiracy.   In addition, BNSF argued that the union, Local 705, could not bring ERISA claims on its own behalf, and that § 511 of ERISA does not provide a civil cause of action.  Finally, BNSF and its corporate parents and affiliates argued that the Amended Complaint improperly treated all of the companies in the BNSF family as a single entity.

On November 3, 2011, the District Court entered judgment in favor of all defendants and dismissed the Amended Complaint.  First, the District Court rejected the § 511 claim, noting that there is no private right of action under that section.[2]  App. at 9.

Second, the District Court held that the plaintiffs had "failed to allege sufficient facts to indicate any direct involvement in the alleged wrongdoing by the . . . parents or affiliates," but instead had attributed the acts of BNSF to its related companies.  *Id.* at 9-10.

Third, the District Court rejected the plaintiffs' § 510 claim against BNSF.  It observed that the plaintiffs admitted that they had been employed by RTS, and that it was RTS who made the decision to terminate them.  The District Court concluded that while BNSF allegedly had "control" over the RTS operation, this was "not sufficient to plausibly suggest that BNSF dictated to RTS what employees it would terminate" once the contract between BNSF and RTS ended.  *Id.* at 11.  "RTS was free to reassign Individual Plaintiffs to other RTS operations," and there was no indication that BNSF had helped make a decision to terminate them instead.  *Id.*

---

[2]     The plaintiffs have not appealed this portion of the District Court's decision.

Fourth, the District Court dismissed the plaintiffs' conspiracy claims. It found that "Plaintiffs present only vague and conclusory statements to support the conspiracy claims," and in particular failed to adequately allege any plausible "underlying agreement" among the defendants. *Id.* at 14-15. It rejected the plaintiffs' attempt to provide further detail in their motion papers, noting that "Plaintiffs cannot rewrite the amended complaint in their response" to a motion to dismiss. *Id.* at 15. In addition, the District Court held that even if plaintiffs had alleged adequate facts concerning a conspiracy, they cannot use state conspiracy law or federal common law to expand the scope of § 510 of ERISA. App. at 16-17.

The District Court's final judgment was entered on November 3, 2011. *Id.* at 19. Local 705 and the RTS employees filed their appeal on December 5, 2011 (the last day for timely filing under Federal Rule of Appellate Procedure 4(a)(1)).

## STATEMENT OF FACTS

For purposes of this appeal, as in the proceedings below, BNSF assumes that the facts as stated in the Amended Complaint are true, subject to the caveat that this Court need not accept legal conclusions or unsupported allegations of fact. *Hickey v. O'Bannon*, 287 F.3d 656, 657-58 (7th Cir. 2002). Except as otherwise noted, all record citations are to paragraphs of the Amended Complaint (pages 2-21 of Appellants' Short Appendix).

BNSF and its corporate parents are the owners of the Corwith Intermodal Rail Yard ("Corwith Yard"), which is located in Chicago, Illinois. App. at 8. Beginning on or about May 1, 2000, BNSF contracted with RTS to manage and run the operations at Corwith Yard. *Id.* at 8-9. That arrangement was subject to a written agreement between RTS and BNSF ("RTS Services Contract"), which is referred to in Paragraph 18 of the Amended Complaint. *See* BNSF Supplemental Appendix at 1. Pursuant to the RTS Services Contract, the workers at Corwith were "the sole employees of and subject to the control, direction, and supervision of [RTS], and not the employees of nor subject to direction, control, and supervision of [BNSF]." *Id.* at 10, § 3.

Plaintiffs were initially somewhat obscure about the identity of their employer, alleging that they "worked with" BNSF at Corwith Yard and otherwise trying to give the impression that they were employees of the railroad.  App. at 9.  However, they later admitted during briefing that their employer was actually RTS, not BNSF.  *Id.* at 29 (Plaintiffs' Combined Response to Motions to Dismiss); *see also* Appellants' Brief ("Appellant Br.") at 4 (admitting that RTS was the plaintiffs' "putative 'employer'").

Similarly, plaintiffs alleged that "an ERISA pension and welfare plan was established," but never allege that it was established by BNSF or any BNSF parent or affiliate.  App. at 9.  Moreover, plaintiffs never alleged that BNSF ever directly participated in, or was otherwise obligated to contribute to, any multiemployer benefit trusts operated by Local 705 for Teamsters-represented employees at Corwith Yard.  *Id.* at 9-11 (describing the Teamster pension plan).[3]

---

[3]    The Amended Complaint makes only the vague allegation that "Plaintiffs had a business and/or employment relationship or expectancy with Defendants whereby BNSF made contractually stipulated contributions for or directly paid putative Plaintiffs['] future or present ERISA-protected benefits . . . although this is not a suit for breach of contract."  App. at 16.  As best BNSF can determine, plaintiffs are suggesting that some of the money that BNSF paid to RTS went to fund RTS contributions to the Teamster pension plan.  *See* Appellant Br. at 4 (alleging that "[t]hrough a series of intermediaries . . . the Railway Defendants paid into the Teamster benefit plans for years.").

As Plaintiffs allege, on or about October 18, 2010, RTS informed Local 705 that "it was permanently discontinuing its operations at Corwith," and that all Teamsters-represented employees working at that site would be terminated effective December 31, 2010. App. at 11. The Amended Complaint further alleges that BNSF no longer intends to use a contractor at Corwith Yard, and instead will perform the work with its own employees, who are represented by the TCIU. *Id.* at 11-12. RTS told all Teamsters-represented employees at the site that "they could apply for their Corwith jobs" with BNSF, but if hired, would be represented by the TCIU. *Id.*

Plaintiffs further allege that any TCIU benefit plans do not offer pension benefits comparable to those offered by the Teamsters. *Id.* Consequently, they assert that the six named plaintiffs ("Individual Plaintiffs") will obtain lesser pension benefits if they become employed by BNSF and represented by the TCIU. *Id.* at 13-14. The Individual Plaintiffs and Local 705 do not allege, however, that BNSF's termination of the RTS Services Contract was specifically motivated by an intent to deprive any RTS employees of pension benefits.

## STANDARD OF REVIEW

This Court reviews *de novo* an order granting a motion to dismiss. *E.g.*, *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).  While the Court must accept all the factual allegations in the complaint, it is not required "to ignore any facts alleged . . . that undermine the plaintiff's claim."  *E.g.*, *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*,  475 F.3d 824, 833 (7th Cir. 2007).  This Court may affirm the District Court's judgment on any ground supported by the record.  *Id.*

Plaintiffs' recitation of the standard of review references the "any set of facts" test that was rejected by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  *See* Appellant Br. at 9. Under the correct test, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Thus, plaintiffs are required to show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Making this "plausibility" determination is a "context-specific task."  *Id.* at 678-79.

In *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011), this Court explained that the *Iqbal* "plausibility" standard means that the plaintiff must "present a story that holds together." *Id.* at 616 (quoting *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010)).[4] "The required level of factual specificity rises with the complexity of the claim." *McCauley*, 671 F.3d at 616-17. Legal conclusions – including formulaic recitations of the elements of the claim – are not sufficient. *Id.* at 617-18. Moreover, if a plaintiff fails to include allegations necessary to support one or more of the elements of the cause of action, then the claim fails as a matter of law. *See, e.g., Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 512 (7th Cir. 2010) (action dismissed when plaintiff failed to allege facts to support "substantial control" element of Title IX claim).

---

[4]     In *Swanson*, this Court explained the rationale for the change in the standard of review as follows:

> We realize that one powerful reason that lies behind the Supreme Court's concern about pleading standards is the cost of the discovery that will follow in any case that survives a motion to dismiss on the pleadings. The costs of discovery are often asymmetric, as the dissent points out, and one way to rein them in would be to make it more difficult to earn the right to engage in discovery. That is just what the Court did, by interring the rule that a complaint could go forward if any set of facts at all could be imagined, consistent with the statements in the complaint, that would permit the pleader to obtain relief.

614 F.3d at 405.

## SUMMARY OF ARGUMENT

It is no surprise when labor unions and employees object to efforts by companies to out-source work.  But in this case, the objection arises from "in-sourcing " – the transfer of work by BNSF from an outside contractor to its own employees.  Teamsters Local 705, which represents the contractor's employees, conceded that it was unable to oppose BNSF's action under the federal labor laws, *see* App. at 15, and so it cast about for an alternative basis for challenge.  It settled on § 510 of ERISA, which prohibits adverse employment actions undertaken for the specific purpose of interfering with pensions.  Yet for a number of reasons, Local 705 and the Individual Plaintiffs simply cannot make their allegations against BNSF fit within the § 510 framework – it is the proverbial round peg in a square hole.

First, an action under § 510 requires that the defendant took some action "to discharge, fine, suspend, expel, discipline, or discriminate against" the plaintiffs.  29 U.S.C. § 1140.  Assuming that § 510 applies to non-employers, this means that the plaintiffs had to allege, at the very least, that BNSF orchestrated or was otherwise materially involved in the termination of their employment.  They failed to do so.

As the District Court pointed out, BNSF's termination of the RTS Services Contract is *not* the same as terminating the plaintiffs' jobs – RTS remained free to assign its employees to other work.

Second, plaintiffs were required to allege that BNSF acted with "specific intent" to interfere with their pensions. Again, they failed to do so. The Amended Complaint alleges that BNSF terminated the RTS Services Contract to achieve overall labor cost savings, not to save on pension expenses. App. at 11-13, 18. Indeed, the idea that BNSF would be motivated by the cost of RTS pensions makes no sense – plaintiffs do not explain why BNSF would care about the pension expenses of a third party contractor.

Third, plaintiffs are unable to analogize this case to *Inter-Modal Rail Ass'n v. Atchison, Topeka & Santa Fe Railway*, 520 U.S. 510, 515-16 (1997). The *Inter-Modal* case was the reverse of this one – it involved out-sourcing, not in-sourcing. The *Inter-Modal* plaintiffs sued the entity that fired them, not their employer's customers. Thus, unlike in this case, the plaintiffs in *Inter-Modal* could offer at least a plausible claim that the defendant was involved in the adverse employment action and was motivated by its pension liabilities.

Likewise, plaintiffs' common law "conspiracy" count is also flawed in several respects. First, their allegations of an "agreement" among the defendants are conclusory, contradictory, and, indeed, nonsensical. Second, plaintiffs are trying to use "conspiracy" to paper over their inability to allege that BNSF had some material involvement in the employment decisions. Plaintiffs should not be permitted to use conspiracy to broaden the scope of § 510. Third, their new RICO theory was never presented below and so comes too late.

But even if plaintiffs had stated a viable claim against BNSF, they did not do so against BNSF's corporate parents and affiliates. Plaintiffs did not allege any direct involvement by BNSF's related companies, and it is not sufficient for them to assert that "all" of their allegations apply to "all" of the defendants.

Finally, the claims by Local 705 itself (as distinct from those of the Individual Plaintiffs) should be rejected because labor unions have no right to bring claims under ERISA. While plaintiffs argued that Local 705 was bringing claims on behalf of its members, that is belied by the actual allegations of the Amended Complaint, which rely on the class action device, not associational standing.

# ARGUMENT

## I. Former Employees of RTS Do Not Have a Viable Claim Under ERISA Against BNSF Railway.

The core issue in this case is whether the former employees of RTS have adequately alleged a cause of action under § 510 of ERISA against an entirely different company, BNSF, that did not employ them or contribute to their pension plan.  There is no need to decide in this case whether, as a general matter, employees can ever bring § 510 claims against their employer's customers.  Rather, it is sufficient to conclude, as the District Court did, that whatever the outer parameters of § 510 may be, the Amended Complaint in this case does not allege a viable claim.

### A. Section 510 Prohibits Certain Means of Reducing Pension Expenses, Not the Termination of Supplier Contracts.

Section 510 of ERISA provides in relevant part as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.

The purpose of § 510 is to prohibit "retaliation for the exercise of plan benefits" or "interference with the attainment of those benefits." *Nauman v. Abbott Labs.*, 669 F.3d 854, 857 (7th Cir. 2012).[5] ERISA generally allows employers to make changes to a pension plan (including reduction or elimination of benefits) through the formal procedures set forth in a plan. Section 510 ensures, however, that any such changes are made through these formal amendment processes, rather than through *ad hoc* or individualized decisions. *See Inter-Modal Rail Ass'n,*, 520 U.S. at 515-16. In this fashion, § 510 prevents attempts to "circumvent the provision of promised benefits." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990).

By contrast, § 510 does *not* generally prohibit companies from implementing business decisions that result in a reduction in overall labor costs, including pension expenses. *See, e.g., Schweitzer v. Teamsters Local 100*, 413 F.3d 533, 537-39 (6th Cir. 2005) (general desire to cut labor costs is not a basis for liability under § 510, even

---

[5]     *See also, e.g., Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir. 1991) ("[I]t has been recognized that the primary focus of § 510 is to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.") (quotation marks & citation omitted).

when such costs include pension expense).[6]  Rather, a claim under § 510 is cognizable only if the employees' loss of benefits was a "motivating factor" for the decision, not a mere consequence.  *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 127 (7th Cir. 1991).

Accordingly, in order to bring a claim under § 510, a plaintiff must allege the following elements:

(1)    That the defendant took some action "to discharge, fine, suspend, expel, discipline, or discriminate against" the plaintiff; and

(2)    That the plaintiff was a "participant or beneficiary" in an "employee benefit plan," as defined by ERISA; and

(3)    That the defendant's actions were undertaken with the specific intent and purpose of interfering with the plaintiff's rights under that employee benefit plan.

---

[6]    *See also, e.g., Inter-Modal*, 520 U.S. at 516 ("To be sure, when an employer acts without [the purpose of interfering with pension benefits], as could be the case when making fundamental business decisions, such actions are not barred by § 510."); *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770 (3d Cir. 2007) (company's desire to reduce labor costs through outsourcing is not basis for § 510 liability); *Andes v. Ford Motor Co.*, 70 F.3d 1332, 1336 (D.C. Cir. 1995) (fact that company's "reasons for selling the division included consideration of [company]'s expensive labor costs, of which pension benefits are not an inconsiderable portion," is not sufficient to establish § 510 liability); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Section 510 protects employees from conduct designed to deprive them of rights created under employee benefit plans; it does not cast liability on an employer for" making nondiscriminatory business decisions.).

*See, e.g., Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.,* 277 F.3d 882, 892 (7th Cir. 2001) (ERISA plan is required); *Lindemann v. Mobil Oil*, 141 F.3d 290, 295 (7th Cir. 1998) (plaintiff must allege that defendant had specific intent to interfere with benefits); *Deeming v. American Standard, Inc.,* 905 F.2d 1124, 1127 (7th Cir. 1990) ("a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship" was changed).[7]

In light of these standards, it should be obvious that there should rarely, if ever, be any § 510 liability associated with decisions that result in a loss of pension benefits for employees of third party companies. In particular, it is very hard to see how firing a contractor – even with the knowledge that the contractor's employees may lose their jobs – could conceivably implicate § 510. Indeed, BNSF is unaware of any case, in any circuit, that finds a company liable under § 510 when it terminates a contract with one of its suppliers. And as we now show, this case does not offer a compelling basis for substantially broadening the law in this area.

---

[7]     In most § 510 cases, the plaintiff seeks to establish these elements of the claim by making a prima facie case under the *McDonnell Douglas* framework. *See, e.g., Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005). If the plaintiff is able to advance a prima facie case, the employer need only demonstrate that the decision was made for a legitimate reason. *See Lindemann*, 141 F.3d at 296.

### B. Plaintiffs Failed to Allege any Material Participation by BNSF in the Decision of RTS to Terminate Its Employees.

Because the first prong of the § 510 test requires a showing that an individual was discharged, disciplined, or discriminated against, some courts have held that § 510 claims can only be brought against an employer.[8]  Other decisions – while not addressing the facts presented here – suggest that the scope of § 510 is, at least in theory, somewhat broader.  *See Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 675 (7th Cir. 2011) (noting that § 510 could provide a cause of action to plan beneficiaries who are not employees).

Assuming that a non-employer could ever be liable under § 510 to the employees of an unrelated company, a plaintiff bringing such a claim should be required, at the very least, to allege that the non-employer controlled, directed or otherwise played some material role in the employment decision at issue.  As a handful of lower courts in this Circuit have suggested, it is not sufficient to assert that a defendant was aware of, anticipated, or agreed with the adverse action.  *See, e.g.,*

---

[8]     *See, e.g., Byrd v. MacPapers, Inc.*, 961 F.2d 157, 161 (11th Cir. 1992); *Clark v. Resistoflex Co.*, 854 F.2d 762, 770-71 (5th Cir. 1988); *Magnus v. St. Mark United Methodist Church,* No. 10 C 380, 2010 U.S. Dist. LEXIS 111152, at *7 (N.D. Ill. Oct. 19, 2010); *cf. McGath v. Auto-Body N. Shore, Inc.,* 7 F.3d 665, 669 (7th Cir. 1993) ("the protections of § 510 are properly limited to *employment situations* that affect pension rights") (emphasis added); *Deeming*, 905 F.2d at 1127 (some change in "employer-employee relationship" is required).

*Havey v. Tenneco Packaging, Inc.*, No. 98 C 7137, 2000 U.S. Dist.

LEXIS 1694, at *33 (N.D. Ill. Feb. 10, 2000) (fact that non-employer

"owns and manages" company is insufficient to support § 510 claim);

*Place v. Abbott Labs, Inc.*, 938 F. Supp. 1373, 1377 (N.D. Ill. 1996) (no §

510 claim against non-employer who neither made the decision to

terminate nor advised those who made the decision).[9]

    Further support for a "*de facto* decision-maker" test may be found

in cases that address the scope of non-employer liability under other

employment statutes.  For example, in *Alexander v. Rush North Shore

Medical Center*, this Court explained that in order to bring a claim

against a non-employer under Title VII, a plaintiff must allege, among

other things, that the defendant had a "right to control" the employee.

101 F.3d 487, 493 (7th Cir. 1996).[10]   In other words, a plaintiff must

allege that the defendant, even if nominally not the employer, exercised

the power to make employment decisions.

---

[9]    When § 510 claims have been brought against an insurer instead of or in addition to the employer, courts have generally concluded that a plaintiff must show that the insurer "coerce[d] an employer to fire an employee." *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1132 n.4 (9th Cir. 1992).  This bolsters the idea that a plaintiff must allege that a non-employer's role in the decision was controlling or otherwise material.

[10]    *See also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24, (1992) (applying similar "right of control" agency test under ERISA).

In this case, plaintiffs never allege that BNSF played any role at all – let alone a controlling or material role – in the decision to terminate their employment with RTS.  The Amended Complaint is devoid of any allegation that BNSF directed, encouraged, advised, or otherwise influenced the decision of RTS to dismiss the individuals who worked at Corwith Yard.

To be sure, the Amended Complaint does allege that BNSF chose to terminate the RTS Services Contract.  *See* App. at 11.  But it does not follow that BNSF directed or required RTS to discharge its employees.  As the District Court noted, RTS was still free to deploy its workers to other facilities or to other jobs.  App. at 11-12.  RTS apparently decided not to do so, but there is no suggestion that BNSF directed or even influenced that decision.  Indeed, any such allegation would be nonsensical.  Even if, as plaintiffs alleged, BNSF exercised "overall management control" of the Corwith Yard operation, App. at 9, it is not reasonable to infer that such control would have persisted after BNSF terminated the RTS Services Contract.  At that point, any decisions about the future employment of the plaintiffs clearly belonged to RTS alone.

In their argument to this Court, the plaintiffs continue to ignore this rather obvious flaw in their case. *See* Appellant Br. at 10-13. They simply assume that BNSF's in-sourcing of work at Corwith Yard was an adverse employment decision, and so do not address the distinction between (1) the termination of the RTS Service Contract by BNSF and (2) the termination of their jobs by RTS. *Id.* They have no response to the District Court's point that it was up to RTS whether they remained employed (and therefore remained covered by the Teamsters pension plan) following the end of the Corwith contract.

Indeed, even if BNSF's in-sourcing decision could be seen as leaving RTS with no choice but to discharge the persons it employed at Corwith (as opposed to assigning them to a different location/customer), there is a significant difference between (1) controlling or materially participating in a termination decision and (2) engaging in business conduct that has the consequence of causing another employer to make its own decisions about the size of its workforce. It is one thing to discharge employees; it is quite another to take some action that causes others to discharge their employees. Section 510 applies to the former situation, not the latter.

To the extent that plaintiffs are arguing otherwise, they seek an unprecedented expansion of § 510 – an expansion that would essentially dispense with any element of proximate cause. It would mean that companies would risk liability any time they act with the knowledge or belief that it could cause others to discharge their employees. There is no indication in the statute or legislative history that Congress intended such a broad restriction on business conduct. Thus, this Court should conclude that BNSF's decision to end its contractual relationship with RTS at Corwith Yard does not translate to § 510 liability simply because one of the economic consequences was that RTS discharged the Individual Plaintiffs.

### C. Plaintiffs Failed to Allege That BNSF Acted With Specific Intent to Deprive Them of Pension Benefits.

As noted above, because a § 510 claim requires "purpose[ful]" interference with ERISA rights, "a plaintiff must plead facts sufficient to demonstrate that her employer terminated her employment with the *specific intent* of preventing or retaliating for the use of benefits." *Magnus*, 2010 U.S. Dist. LEXIS 111152, at *15 (citing *Lindemann*, 141

F.3d at 295) (emphasis added).[11]  Put another way, a plaintiff must allege "some basis for believing" that the prohibited intent to retaliate or prevent the use of benefits was present.  *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 943 (7th Cir. 2007); *see also, e.g., Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994) ("A plaintiff seeking relief under § 510 must establish that the complained of action affecting his employment situation was taken by his employer with the specific intent of interfering with his benefit rights.").[12]  In *Teumer*, this Court further explained that "the illicit motivation must be a 'determinative factor' in [the disputed] action.  . . .  That is, the plaintiff must ultimately show that a desire to frustrate his attainment or enjoyment of benefit rights contributed toward the employer's decision." 34 F.3d at 550 (quoting *Meredith*, 934 F.2d at 127).

---

[11]     *See also Phelps v. Parsons Technical Support, Inc.*, 2:09-0327, 2010 U.S. Dist. LEXIS 116197, at *12 (S.D. Ind. Oct. 29, 2010) (failure to allege interference with the specific intent to prevent the use or attainment of benefits is grounds for dismissal on the pleadings).

[12]     In this respect, actions under § 510 are different from other anti-retaliation employment statutes, such as Title VII.  *Bilow*, 277 F.3d at 892 ("The most important of these [differences] is the fact that, unlike a Title VII retaliation plaintiff, an ERISA retaliation plaintiff must demonstrate that the employer had the *specific intent* to violate the statute and to interfere with an employee's ERISA rights" (emphasis in original)).

In this case, there is no allegation that BNSF acted with the requisite "specific intent" to evade pension liabilities.  As an initial matter, plaintiffs do not appear to allege that BNSF contributed to any of the Teamsters plans sponsored by Local 705 for RTS employees.   At most, plaintiffs appear to allege that BNSF or its affiliates made such contributions at one time in the past, or that part of money that BNSF paid to RTS was used by RTS to fund employee pensions.  *See* App. at 16.  But they cannot and do not say that BNSF was in any way obliged to contribute to the RTS employee pension plan at issue.[13]  Accordingly, there is no rationally inferable financial motive on the part of BNSF to interfere with the Individual Plaintiffs' ability to continue to participate in the Local 705 pension plan.

Moreover, even if the Amended Complaint had alleged that BNSF was a contributor to the RTS pension plan, the plaintiffs still failed to allege that the BNSF decision at issue – the decision to terminate the RTS Services Contract – was plausibly motivated by a desire to interfere with the RTS employees' pensions.   *Cf. Tricontinental*, 475

---

[13]    Plaintiffs also fail to allege any ability on the part of BNSF to amend or otherwise affect the design of the Local 705  pension plan (or any welfare plans in which the Individual Plaintiffs participate).  This is consistent with the fact that BNSF was not a participant in those plans.

F.3d at 839 (affirming dismissal of misrepresentation claim because plaintiff failed to allege "primary intent"). The closest they come is in paragraph 41 of the Amended Complaint, which alleges that "*prior to any relationship between RTS and the Railroad*," BNSF and others decided "to intentionally interfere (from time to time)" with the Teamsters-represented employees' pensions. App. at 16-17 (emphasis added). But on its face, this allegation of intent has nothing to do with the specific acts at issue. In other words, the plaintiffs' allegations fail to connect the requisite intent (to interfere with RTS employee pensions) with the complained-of action by BNSF (the decision to terminate the RTS Services Contract).

Indeed, if anything, the Amended Complaint asserts that BNSF was motivated by overall labor cost savings, not pension expenses. It pleads that BNSF decided to end its contract with RTS and employ its own workforce at Corwith because the railroad was able to negotiate "in excess of $1,000,000" in omnibus wage and benefit concessions from TCIU, including "lower wage scales" and no "automatic application of national wage increases or lump sums," as well as an automatic right of termination. *Id.* at 12-13.

In making such allegations, the plaintiffs shoot themselves in the foot. As noted above, it is well-settled that an intent to realize overall labor cost savings is not sufficient to satisfy the specific intent element of a § 510 claim. Thus, if, as the Amended Complaint alleges, BNSF was motivated by a desire to realize a broad range of labor cost savings, that would be a legitimate basis for its decisions, and thus there would be no § 510 liability. *See Isbell*, 418 F.3d at 796 (employer's legitimate desire to move to commission-based structure obviates need to examine plaintiff's prima facie case); *see also Crawford v. TRW Auto. U.S. LLC*, 560 F.3d 607, 614 (6th Cir. 2009) (company that closed union plant and transferred work to non-union plant is not liable under § 510 even if labor costs were a consideration); *Andes*, 70 F.3d at 1336 (no § 510 liability for company that sold division, in part because of "expensive labor costs").

Before this Court, the plaintiffs still are unable to point to anything in the Amended Complaint that plausibly alleges that BNSF acted with the requisite intent. Instead, plaintiffs argue that there is no requirement, at the pleading stage, to "prove" the employer's motivation. Appellant Br. at 13-14.

Even if that is so, it misses the point.[14]  Neither BNSF nor the

District Court ever suggested that plaintiffs had to "prove" anything at

the pleading stage.  But they do need to make a plausible allegation.

While plaintiffs blithely assert that they did so, they fail to specify

where in the twenty page Amended Complaint the requisite allegations

appear.  A defendant is not required to sift through prolix and

convoluted allegations in an effort to ascertain the true nature of the

claim.  *E.g., Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 776

(7th Cir. 1994) (affirming dismissal of "confusing, redundant, and

seemingly interminable amended complaint" in RICO action).

Especially in a case like this – where the asserted legal theory is, at

best, untested – the plaintiffs should not be permitted to "plead[] by

means of obfuscation."  *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir.

1990).[15]

---

[14]      Parenthetically, the cases cited by plaintiffs, such as *Salus v. GTE Directories Service Corp.*, 104 F.3d 131, 136-38 (7th Cir. 1997), do not address a distinction between "pleading" and "proving" specific intent allegations in a § 510 case.  Rather, the cited cases stand for the proposition that pensions need not be the "sole" reason for the discharge, but rather must be a "motivating factor."  *Id.*

[15]      Local 705 and the Individual Plaintiffs also argue that "[c]ontrary to the district court's opinion, there is no requirement for a Section 510 claim that defendant was actually successful in interfering with ERISA rights."  Appellant Br. at 13.  That was not an issue in the briefing before the District Court, and as best BNSF can determine, the District Court made no such conclusion.

**D.    The *Inter-Modal* Decision Does Not Support the Employees' Claim Against BNSF In This Case.**

Plaintiffs rely heavily on the Supreme Court and Ninth Circuit decisions in *Inter-Modal*, suggesting that this action is "modeled" on that case.  Appellant Br. at 10.  They contend that both that case and this case involved a "transaction" undertaken "to further the scheme of interfering with ERISA protected rights."  *Id.* at 11-12.

In fact, however, *Inter-Modal* is hardly an apt "model" for this case.  As plaintiffs concede, *Inter-Modal* involved the reverse of the scenario presented here:  in that case, the railroad fired its *own* employees and out-sourced the work.  *See* 80 F.3d 348, 350 (9th Cir. 1996), *vacated by*, 520 U.S. 510 (1997).  The fact that the defendant had taken the adverse employment action was undisputed.  *Id.*  Moreover, the plaintiffs clearly alleged that the railroad had done so "for the express purpose of avoiding" its own pension obligations.  *Id.*

Accordingly, neither the Ninth Circuit nor the Supreme Court had any reason to address the problems that the plaintiffs face here.  *Inter-Modal* says nothing about the viability of a § 510 claim that is brought by a contractor's employees against the contractor's customer for the act of terminating the contractor's services agreement.

To be sure, the Ninth Circuit did conclude that the outside contractor (In-Terminal Services) could, in theory, be liable under § 510 despite the fact that it was not the claimants' employer. *Id.* at 350 n.5. But at most, that portion of *Inter-Modal* suggests only that a non-employer may be liable under § 510 if it is materially involved in the decision to terminate an individual for pension-related reasons.[16] Nothing in *Inter-Modal* indicates that a party can plead a § 510 claim against non-employer entities that did *not* have a controlling role in the relevant employment decision.

The other cases cited by plaintiffs are likewise inapposite. *See* Appellant Br. at 12-13. None of those cases involve in-sourcing. More importantly, none of those cases involve claims against a non-employer in circumstances where a separate entity controlled the employment decision. Nor do any of those cases involve the problem of pleading "specific intent" against a defendant that did not have any financial exposure under the employees' pension plan.

---

[16]    In *Inter-Modal*, the Ninth Circuit noted that in *Tingey*, 953 F.2d at 1132 n.4, it had held that an insurance carrier that "'coerces an employer to fire an employee'" can be liable for a § 510 violation. 80 F.3d at 350 n.5. The *Inter-Modal* panel held that, consistent with *Tingey*, if a person conspires with an employer in a similar fashion, it too could be held liable. *Id.* In all events, the plaintiff must allege that the non-employer was somehow controlling or otherwise actively participating with the employer in the decision to terminate.

## II.   Former Employees of RTS Do Not Have a Viable Claim of Conspiracy Against BNSF Railway.

Given that there is no plausible claim of a violation of § 510 by any of the defendants, it follows that there is no viable claim of conspiracy either.  Moreover, plaintiffs' conspiracy count is flawed in several other respects as well.

### A.   Plaintiffs' Allegations of Conspiracy Are Insufficient.

A claim for common law civil conspiracy requires, at a minimum, allegations detailing (1) the agreement of each defendant to the operation of the conspiracy, as well as (2) specific acts in furtherance of the conspiracy.  *See, e.g., Bressner v. Ambroziak*, 379 F.3d 478, 483 (7th Cir. 2004) (elements of conspiracy under Illinois law).  A conspiracy count may be dismissed if it contains only conclusory or vague allegations of conspiracy.  *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1137 (7th Cir. 1986).

In this case, as the District Court concluded, the Amended Complaint failed to set forth sufficient allegations of a plausible conspiracy.  App. at 15.  To the extent that the plaintiffs allege any "agreement" among the defendants to violate ERISA, the asserted conspiracy is contradictory and nonsensical.  Why would RTS "conspire"

to be removed from its position as the operator at Corwith?  What possible motivation would TCIU (a labor union) have to "deprive" former RTS employees of their pensions?  *Id.*  The whole notion falls well short of the requisite standards of plausibility.  Thus, the District Court correctly concluded that Plaintiffs' "conspiracy" count was too implausible, contradictory, and conclusory to stand.[17]

In their argument to this Court, the plaintiffs do not try to rehabilitate their Amended Complaint by pointing to any specific allegations sufficient to state a plausible common law conspiracy claim.  Rather, they insist that they must have pled a valid conspiracy claim because a conspiracy claim was "allowed" in *Inter-Modal*.  Appellant Br. at 19-20.  That is a non-sequitur.  Even if *Inter-Modal* tacitly accepted a "conspiracy" claim under § 510, the plaintiffs in this case were still obliged to set forth sufficient allegations to state a plausible conspiracy.  Because they failed to do so, the conspiracy count was properly dismissed.

---

[17]     As the District Court also noted, plaintiffs tried to expand upon their conspiracy allegations in their response to the motions to dismiss.  App. at 15.  It is, however, "axiomatic" that "a plaintiff may not amend his complaint in his response brief."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

**B.    Plaintiffs' Conspiracy Claim is an Improper Attempt to Broaden the Scope of Section 510 of ERISA.**

In addition to finding that the Amended Complaint lacked sufficient allegations of conspiracy, the District Court also concluded that plaintiffs cannot use common law conspiracy to "expand" the scope of § 510.  App. at 17.  In response, plaintiffs argue that even if § 510 conspiracy is a "novel" theory, it is a "natural progression of the law" and thus should have been accepted by the District Court, at least at the pleading stage.  Appellant Br. at 20.

However, the problem with plaintiffs' use of "common law conspiracy" is not that it is new or novel – it is that they are trying to use conspiracy to stretch § 510 beyond the bounds intended by Congress.[18]  Essentially, plaintiffs are arguing that even if they cannot allege that BNSF was directly involved in or responsible for the termination of their employment, they should nevertheless be able to sue the railroad for "conspiracy" to interfere with their rights.  That is tantamount to doing away with the need to allege that the defendant took some adverse action against the plaintiff.

---

[18]    As the District Court observed, to the extent that plaintiffs were relying on state law conspiracy, *see* App. at 39, the claim would be preempted by ERISA.  *See* 29 U.S.C. § 1144(a).  This discussion presumes that the plaintiffs are relying on federal common law.

Expanding § 510 in such a fashion would be inappropriate.  The Supreme Court has "observed repeatedly that ERISA is a 'comprehensive and reticulated statute.'"  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)).  The Court has "therefore been especially reluctant to tamper with [the] enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." *Knudson*, 534 U.S. at 209 (internal quotation marks & citation omitted).  Indeed, "ERISA's 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* (quoting *Mertens*, 508 U.S. at 254).

This Court need not decide, in this case, whether common law conspiracy is ever available in a § 510 action.  On this point, it is sufficient to conclude that a common law conspiracy count cannot be used to circumvent the obligation in a § 510 action to plausibly allege that each defendant was materially involved in the employment decisions at issue, and that each defendant acted with specific intent to interfere with pension benefits.

## C.    Plaintiffs' New RICO Theory Should Be Rejected.

Finally, plaintiffs suggest that even if their conspiracy theory is invalid, they should have been "granted leave" to recast it as a RICO count. Appellant Br. at 19-20. There are several related reasons why this argument should be rejected. First, plaintiffs never asked the District Court – either before or after entry of judgment – for leave to amend their complaint to add a RICO count.[19] Absent such a request, plaintiffs can hardly complain that they were denied such leave.

Second, it is not the District Court's job to invent and suggest new theories that might improve a flawed cause of action. As this Court recently reiterated, "[a] federal court is not obligated to sift through a complaint to extract some merit when the attorney who drafted it has failed to do so himself." *Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011).

---

[19]    Of course, the District Court would have been justified in rejecting such a motion. "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Bressner*, 379 F.3d at 484 (discussing the standard for post-judgment motions to amend pleadings). In this case, a motion to amend to add a RICO claim would have been futile because plaintiffs would not be able to plausibly allege, *inter alia*, a RICO "enterprise."

Third, this legal theory was never advanced below, and so cannot be raised before this Court in the first instance. *See, e.g., County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 819-20 (7th Cir. 2006) (noting that "we ordinarily will not address new issues raised for the first time on appeal." (emphasis omitted)); *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir. 1978) (affirming dismissal and rejecting appellants' argument on appeal that "set[] forth a new theory of liability").

## III.    The Amended Complaint Failed to Allege Any Claim Against BNSF's Corporate Parents.

Because the Amended Complaint is deficient with respect to BNSF, there is no need to reach the further question whether the plaintiffs stated a viable claim against BNSF's corporate parents and affiliates – the arguments outlined above apply equally to them as well. In any event, as we now show, there are additional reasons to affirm the dismissal of the Amended Complaint against BNSF's parents and affiliated companies.

The Amended Complaint names four corporate parents or affiliates of BNSF, in addition to BNSF itself.[20]  Rather than making separate allegations against these entities, however, the Amended Complaint simply refers to them all "collectively as 'The Railroad' or BNSF or Defendants."  App. at 8.  Plaintiffs insist that such undifferentiated allegations against "the Railway Defendants" are adequate to state a claim against all of BNSF's parents and affiliates. Appellant Br. at 22-23.

However, it is well settled that a parent company and its subsidiary are "two separate entities and the acts of one cannot be attributed to the other." *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). Thus, a plaintiff must either allege some direct participation by the parent, or try to pierce the corporate veil by showing that one corporation is merely "a dummy or sham for another." *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002)

---

[20]     Three of those four entities are Burlington Northern Santa Fe LLC, Burlington Northern Santa Fe Corporation, and Berkshire Hathaway Inc., all of which are parents of BNSF Railway.  As noted in the Corporate Disclosure, above, Santa Fe Terminal Services no longer exists.  It appears that plaintiffs added it as a defendant in order to further their effort to draw a parallel between this case and the *Inter-Modal* case.

(setting forth veil-piercing test); *Esmark, Inc. v. NLRB*, 887 F.2d 739, 756 (7th Cir. 1989) (a parent corporation may be held liable for the wrongdoing of a subsidiary only where the parent "directly participated" in the subsidiary's actions).

The plaintiffs in this case offer no such allegations – they do not assert that any of BNSF's related companies directly participated or were otherwise separately involved in the decisions at issue.  Nor do they attempt to allege that BNSF's corporate structure was a mere sham.  Thus, they do not state a claim against BNSF's corporate parents and affiliates.

Nor can the plaintiffs circumvent this problem by insisting that "all" of the allegations pertain to "all" of the defendants.  Under Federal Rule 8, a plaintiff's complaint may not simply "lump together" multiple defendants and treat them all as one.  *See, e.g., Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 865 (N.D. Ill. 2009) (plaintiffs' complaint "treat[ed] the numerous defendants . . . as a collective whole," and such claims "fall short of the requirement that a complaint cite supporting facts in order to survive a motion to dismiss.").  Such an approach to pleading is

improper because it "fails to place each Defendant on notice as to its alleged wrongful conduct." *Id.*[21]

Nor does it help plaintiffs to once again invoke *Inter-Modal* as a "model." Appellant Br. at 20-21. Whatever may have been alleged in *Inter-Modal* against the rail terminal's parent companies, the plaintiffs in this case failed to assert any distinct conduct on the part of BNSF's related companies.

## IV.    Local 705 Cannot Bring ERISA Claims on Its Own Behalf.

In addition to its many other flaws, the Amended Complaint fails to distinguish between the claims of the Individual Plaintiffs and those of the union, Local 705. Rather, the Amended Complaint makes repeated references to "Plaintiffs'" ERISA rights, without ever indicating any distinction between the Individual Plaintiffs' asserted ERISA rights and the rights apparently claimed by Local 705. *E.g.*, App. at 15-19.

---

[21]    *See also, e.g., Corazon v. Aurora Loan Servs.*, Case No. 11-00542, 2011 U.S. Dist. LEXIS 52712, at *10 (N.D. Cal. May 5, 2011) ("Rule 8(a)(2) requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them. Here, Plaintiff simply refers to 'Defendants' in nearly all of her allegations."); *Aaron v. Aguirre*, No. 06-CV-1451, 2007 U.S. Dist LEXIS 16667, at *75 n.6 (S.D. Cal. Mar. 8, 2007) ("[U]ndifferentiated pleading against multiple defendants is improper."); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping together multiple defendants in one broad allegation fails to satisfy notice requirement of Federal Rules of Civil Procedure).

It is settled law that ERISA provides no rights for labor unions. *See* 29 U.S.C. §§ 1132(a)(1)(B), 1140 (limiting rights under the statute to plan "participant[s]" and "beneficiar[ies]"); 29 U.S.C. § 1002(7), (8) (defining "participant[s]" and "beneficiar[ies]" as individuals); *Southern Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*, 326 F.3d 919, 922-23 (7th Cir. 2003) (labor unions are not covered by ERISA). Hence, the claims brought by Local 705 in its own name must be dismissed.

Because the Amended Complaint was dismissed on other grounds, the District Court did not need to address this issue. But in the briefing below, the plaintiffs argued that Local 705 was bringing claims on behalf of its members. App. at 34. That is not so. Rather than relying on Local 705's "associational standing" to bring claims on behalf of the union's members, the plaintiffs invoked the class action mechanism under Federal Rule of Civil Procedure 23(a) and 23(b)(2). App. at 13-15. Here again, plaintiffs cannot fix their Amended Complaint by revising it during motions practice before the District Court. Thus, if the Court reaches this issue, it should affirm the dismissal of Local 705's claims on this alternative ground.

## CONCLUSION

For the foregoing reasons, the District Court's judgment dismissing the Amended Complaint should be affirmed.


Dated:  August 15, 2012


                              Respectfully submitted,



                              By: s/ Donald J. Munro
                              Donald J. Munro
                              JONES DAY
                              51 Louisiana Avenue, N.W.
                              Washington, D.C. 20001
                              Telephone: (202) 879-3939
                              E-mail:  dmunro@jonesday.com



                              Attorney for Defendants-
                              Appellees  Burlington Northern
                              Santa Fe, LLC, Burlington
                              Northern Santa Fe Corp., BNSF
                              Railway Company, Santa Fe
                              Terminal Services, Inc., and
                              Berkshire Hathaway Inc.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains  8,548 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), as modified by Circuit Rule 32(b), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced serif typeface using Microsoft Office Word 2007 in 14-point Century font.

Dated:  August 15, 2012

                                         s/ Donald J. Munro
                                        Donald J. Munro

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2012, I electronically filed the foregoing Brief of Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit via the Court's CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system upon the following counsel:

Nicholas C. Kefalos
Verner Moran, LLC
27 North Wacker Drive
Suite 2000
Chicago, IL 60606-2800

Clifford Raymond Perry, III
Laner, Muchin, Dombrow,
Becker, Levin & Tominberg, Ltd.
515 North State Street
Suite 2800
Chicago, IL 60654

Jeffrey Andrew Bartos
Guerrieri, Clayman, Bartos &
Parcelli, P.C.
1625 Massachusetts Ave., N.W.
Suite 700
Washington, DC 20036

By:  s/ Donald J. Munro
        Donald J. Munro