No. 11-3705

# *United States Court of Appeals*
### For The Seventh Circuit

**TEAMSTERS LOCAL UNION 705**, *et al.*,
*Plaintiffs-Appellants,*

v.

**BURLINGTON NORTHERN SANTA FE, LLC**, *et al.*,
*Defendants-Appellees.*

**On Appeal From the United States District Court for the Northern District of Illinois, No. 1:10-cv-07378 (Hon. Samuel Der-Yeghiayan)**

## SUPPLEMENTAL APPENDIX OF APPELLEES BURLINGTON NORTHERN SANTA FE, LLC; BURLINGTON NORTHERN SANTA FE CORPORATION; BNSF RAILWAY COMPANY; SANTA FE TERMINAL SERVICES, INC.; AND BERKSHIRE HATHAWAY INC.

Donald J. Munro
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
E-mail:  dmunro@jonesday.com

*Attorney for Defendants-Appellees*
*Burlington Northern Santa Fe, LLC,*
*Burlington Northern Santa Fe Corp., BNSF*
*Railway Company, Santa Fe Terminal*
*Services, Inc., and Berkshire Hathaway Inc.*

**BNSF**

**ORIGINAL**

RTS @ Corwith effective Sep 1, 2004

## INTERMODAL FACILITY SERVICES AGREEMENT

This AGREEMENT is made as of September 1, 2004 between **THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY**, a Delaware corporation, hereinafter called "Railroad Company", and **Rail Terminal Services, L.L.C.**, a Delaware Limited Liability Company, hereinafter called "Contractor."

## RECITALS:

Whereas, Railroad Company operates an intermodal terminal at Corwith, Illinois, hereinafter called "the Terminal". As part of the operation of the Terminal, Railroad Company requires ramp/deramp and certain ancillary services to be performed.

Whereas, Contractor performs ramp/deramp and ancillary intermodal terminal services, and desires to perform the services described herein for Railroad Company at the Terminal.

Whereas, Railroad Company desires that the Contractor perform such services and Contractor is willing to perform such services for Railroad Company at the Terminal, pursuant to the terms and conditions hereinafter set forth.

NOW, THEREFORE, for such good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

## 1) GENERAL

a) Entire Agreement
This Agreement, together with Schedule A attached hereto, constitutes the entire Agreement between the parties with respect to the subject matter hereof and merges and replaces all prior negotiations, discussions, representations, warranties, offers, promises and agreements with respect to such subject matter.

b) Definition of Chargeable Lift
For purposes of this Agreement, a chargeable lift is defined as a lift to or from a railcar only, as determined by Railroad Company's computer program ("Vancount") or other means as mutually agreed to in writing by Railroad Company and Contractor. Notwithstanding the foregoing, the following lifts will not be included in the calculation of the total number of chargeable lifts:  (i) lifts of units left behind due to negligence on the part of Contractor; and (ii) lifts of units misloaded or misrouted due to negligence on the part of Contractor; or (iii) lifts reported by other than OASIS equipped lift machines, or (iv) lifts of units to wrong chassis that is left to dwell over twelve hours, or (v) other miscellaneous lifts not authorized by Railroad Company management.


**BNSF**

RTS @ Corwith effective Sep 1, 2004

c) Housekeeping and Damage
Contractor shall maintain, in a neat and orderly manner, that portion of the Terminal
where it performs services detailed in Schedule A. The Contractor will be responsible for
keeping their areas clean, neat and free of obstructions for all the areas that Contractor
occupies.

d) Joint Proficiency Audits
Railroad Company and Contractor shall participate in periodic joint proficiency audits to
determine Contractor's adherence to safe and efficient work practices, as well as
environmental compliance. These joint proficiency audits will be performed on not less
than a quarterly basis. The results of these audits, as well as a corrective action plan if
warranted, will be documented in writing. The corrective action plan will specify the
timeframe--30 days unless otherwise agreed-- by which any actions will be completed.
Contractor's failure to implement the corrective action specified by Railroad Company
plan may result in termination of this Agreement as further specified in Section 9(c)
below.

e) Staffing Levels
Contractor shall provide the services and functions listed in Schedule A at the Terminal
as needed by Railroad Company, up to 24 hours per day, seven days per week,
regardless of the number of positions or employees utilized. Contractor shall furnish a
level of staffing for the contracted services which is sufficient to provide Railroad
Company's required high levels of performance given varying volumes of business and
hours of service. Contractor agrees to review with Railroad Company any changes in
staffing levels proposed to be made by Contractor at the Terminal, in advance of
implementation of any such changes. The parties agree to cooperate to achieve and
maintain efficient and effective operation of the Terminal.

f) Training Manuals
Contractor will provide Railroad Company copies of Contractor's employee training
manuals, safety and environmental manuals, and operating manuals. All manuals
provided by Contractor to its employees must meet or exceed those standards and/or
requirements published by Railroad Company and/or lift equipment OEM's and/or
regulatory agencies. Railroad Company shall not be responsible for any deficiencies in
Contractor's manuals.

g) Information Systems
The performance of the services detailed on Schedule A hereto includes Contractor's
utilization of, and data input of date into, any computerized or manual information system
as may be designated by Railroad Company. It is understood by the parties to this
Agreement that such information systems may change from time to time.



RTS @ Corwith effective Sep 1, 2004

h) Photographic Identification
Each person performing labor on behalf of Contractor hereunder shall, at all times while present on Railroad Company's property, carry photographic identification supplied by Railroad (i.e. Security Badge) to Contractor's employees, agents, servants or subcontractors.

Railroad Company's distribution of photographic identification to Contractor's employees, agents, servants or subcontractors does not obligate Railroad Company to control, supervise or otherwise direct Contractor's work or actions, including the actions of its employees, agents, servants or subcontractors.

i) Radio Equipment
Contractor shall provide all radio equipment to support the operations hereunder, including (unless otherwise directed by Railroad Company) radios mounted in all equipment, pak-sets, and the base station. Contractor shall have permission to operate radio units supplied and maintained by Contractor in the performance of services under this Agreement, using those channels and frequencies licensed to Railroad Company, which Railroad Company from time to time specifies.

   i) Contractor agrees to use such channels and frequencies only for the purpose of performing services hereunder and to communicate with Railroad Company personnel.

   ii) Contractor agrees to cause its employees using said channels and frequencies to fully comply with the rules and regulations of the Federal Communications Commission (FCC) and Railroad Company relating to the use thereof.

   iii) Railroad Company, as the licensed party, shall have the sole right of control of said radios while being used and operated by Contractor's employees for the purpose referred to above, and Railroad Company shall at all times have access to said radios as will enable Railroad Company to carry out its responsibilities under the licenses.

j) Governing Law
All questions arising under this Agreement shall be decided according to the laws of the State of Texas, without regard to conflicts of law provisions.

k) Amendment
This Agreement may be amended only by a written instrument signed by the parties. In the event of a significant change in business, Railroad Company and Contractor shall negotiate in good faith to amend this Agreement.

l) No Waiver of Performance
No waiver by any party of its rights, or failure of either party to insist upon full and complete performance by the other party of any of its obligations, hereunder shall



**BNSF**

constitute or affect a waiver or release of such party's right to insist on full and complete performance of such obligation in the future.

m) <u>Survival of Obligations</u>

The indemnification obligations and obligations to make payments for services rendered and events occurring under this Agreement prior to its expiration or termination shall survive such expiration or termination.

n) <u>Records</u>

Contractor will keep full and detailed records. Railroad Company will be afforded access at any reasonable time to all of Contractor's records relating to billing, quality of work to be performed, employees performing said work, correspondence, instructions, drawings, receipts, vouchers and memoranda relating to this Agreement, and Contractor will preserve all such records and afford access to the Railroad Company for a period of three (3) years after final payment.

o) <u>Attorneys' Fees and Costs</u>

In the event either party brings an action to enforce its rights under this Agreement, the prevailing party shall be entitled to recover all of its costs and reasonable attorneys' fees.

p) <u>Confidentiality</u>

Except to the extent the terms of this Agreement or information about this Agreement are required by any court, governmental agency, labor arbitrator or any law to be disclosed, each party to this Agreement shall not disclose the contents of this Agreement or information about this Agreement to any other party, without the prior written consent of the other party to this Agreement, which consent shall not be unreasonably withheld.

q) <u>Notices</u>

Any notice required or permitted to be given hereunder by one party to the other shall be in writing and the same be given and shall be deemed to have been served and given if (i) placed in the United States mail, certified, return receipt requested, or (ii) deposited into the custody of a nationally recognized overnight delivery service, addressed to the party to be notified at the address for such party specified below, or to such other address as the party to be notified may designate by giving the other party no less than thirty (30) days advance written notice of such change in address.

r) <u>Billing Audits</u>

BNSF may audit the records and supporting documentation of RTS for the purposes of verifying the accuracy of all charges for Services hereunder including verifying that RTS has only requested compensation for Allowable Costs. These audits may be conducted at any time during the Term of this Agreement, or during the two years following Termination. BNSF shall give RTS prior notice and conduct such audits during normal business hours. Audits may be conducted by BNSF personnel or a third party, at BNSF's option. RTS will not assert that any such documentation or records are privileged or otherwise seek to withhold such documents from BNSF or its agents; provided that such



**BNSF**

agent is not a competitor of RTS who is providing services substantially similar to the Services provided by RTS in whole or in part under this Agreement. If an audit demonstrates that RTS's invoices for the Services for the audited period were not correct, RTS will promptly credit BNSF for the amount of any paid overcharges. If no further payments are due RTS under this agreement, RTS shall pay such payments due to BNSF within thirty (30) days. In the event an audit reveals an overcharge of more than five (5) percent of the audited invoices, RTS will reimburse to BNSF the actual cost of the audit whether performed by a third party or by BNSF personnel. Otherwise the cost for these audits will be the responsibility of BNSF.

s) <u>Allowable Cost</u>

The only costs incurred by RTS that are included by the terms of this Agreement are Allowable Costs. For purposes of this Agreement, and subject to the limitations set forth herein, Allowable Costs shall include legal fees, attorney's fees, including defense costs, and associated legal expenses and/or costs that are incurred by Contractor that are not directly related to the delivery of the Services and are not reimbursed by Contractor's insurance or other third party sources. Such legal fees shall be treated as an Allowable Costs up to the lesser of Contractor's actual expenses or $85,000 per year. Provided however, that in no event will the amount of Allowable Cost exceed $85,000 per contract year. Provided further that none of the items that are specifically excluded from Allowable Costs under Section 1. (s) nor an award of attorneys' fees under 1. (o) shall be considered an Allowable Cost under this provision. Allowable Costs are generally those lawful, reasonable and customary payments and/or expenses that are directly related to the delivery of services hereunder. RTS shall not request, nor shall BNSF under any circumstances be required to pay to RTS any of the following costs or expenses, such costs and expenses being expressly excluded from the definition of Allowable Cost hereunder:

(a) any cost or expense for fines or penalties (including penalties under this agreement or any labor agreement), or

(b) any cost or expense which is not directly related to the delivery of services hereunder including, but not limited to, charitable contributions, political contributions, public relations expenses, advertising or entertainment, or

(c) any cost or expense which is more than the cost for similar goods and services set forth in generally available commercial list prices, taking into account reasonable seasonal variations, or

(d) except as expressly provided herein, any cost or expense for legal judgments, settlements, damages, awards of attorney's fees to an adverse party or;

(e) any cost or expense related to any illegal payments or illegal expenses, or

(f) any cost or expense which creates benefits for or addresses the costs of any RTS or SSA facility other than the facility covered by this agreement.



**BNSF**

RTS @ Corwith effective Sep 1, 2004

Contractor
**Rail Terminal Services, L.L.C.**
Mark Davis
1131 Klickitat, Seattle, WA. 98134
Phone number: (206) 382-4460
Fax Number: (206) 621-8658

Railroad Company
**THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY**
Assistant Manager – Contract Administration
Marketing 1st Floor, 2650 Lou Menk Drive, Ft Worth, TX. 76131
Phone Number: (817) 867-6537
Fax Number: (817) 352-6437

## 2) COMPENSATION

For the services rendered and equipment furnished by Contractor pursuant to this
Agreement, Railroad Company shall pay Contractor in accordance with the rates
contained in Schedule A. Excluding the Performance Compensation Program (PCP), the
rates in Schedule A are estimated total monthly Contractor costs for the period of
September 1, 2004 through December 31, 2004 associated to the operation including a
2% cost margin for relief of all financial liabilities incurred after ultimate contract
termination. Actual cost of the operation will be determined within the first quarter of
each year for the preceding calendar year or portion thereof in the case of calendar year
2004. The actual monthly compensations, less the 2% liability relief cost will be
compared to actual cost of the operation for the applicable period. If the actual cost
proves to be less than the monthly compensations less the 2% liability relief, that
difference will be for the benefit of the BNSF in the annual reconciliation (See Attachment
A). If the actual cost proves to be higher than the monthly compensations less the 2%
liability relief, that difference will be for the benefit of RTS in the annual reconciliation
(See Attachment A).

It is expressly communicated that Item 2 (h) Yard Damage, with the exception of Item
2(h)(2) as noted within, is separate and distinct compensation under this agreement and
will not be included as part of the Contractor's cost when calculating actual cost during
the year end calculations.

To the extent that Contractor's provision of any of the services enumerated in Schedule A
may be subject to sales or use taxes, it is expressly agreed the rates specified in
Schedule A include any and all such sales or use taxes, and that Contractor shall be
responsible for remitting any such taxes due to the proper taxing authority.

Should the contract be terminated by either party at a time other than a calendar year



**BNSF**

RTS @ Corwith effective Sep 1, 2004

end, all cost reconciliations prescribed herein and in attachment A for a calendar year
end will be applied to the period of January 1 through the mutually agreed contract
termination date.

a) Railroad Company's Right To Terminate Categories of Service
Each of the categories of service to be provided by Contractor hereunder, as separately
enumerated in Schedule A, shall be regarded as separate and distinct. It is understood
and agreed to by the parties that Railroad Company will determine whether particular
categories of service are to be provided and shall have the right to terminate Contractor's
performance of one or more of the distinct categories of services, and thereafter to
perform that category of service by means other than utilization of Contractor. Contractor
shall receive compensation only for the categories of service performed and the
equipment furnished by it during the applicable time period.

b) Contractor Billing
Railroad Company prepares invoice and e-mails to Contractor on or about the tenth day
of each month for services rendered for the first day through the last day of the previous
calendar month for charges on a per lift basis, giving credit on such invoice for any
amounts paid in advance. Such invoice shall also include the fixed monthly amounts due
for charges from the first through the end of the previous month. Railroad Company shall
pay said invoice within 15 days. Contractor shall separately invoice Railroad Company,
on a calendar month basis, for part-time labor as requested by Railroad Company.
Railroad Company shall pay said invoice within 30 days of receipt.

It is further understood and agreed that in no event shall Railroad Company be required
to make deductions from compensation or report earnings of an employee of Contractor
or subcontractor, under any Social Security Act, Railroad Retirement Act, Unemployment
Compensation or Insurance Act, or any other statute, Local, State or Federal, purporting
to levy a tax on payrolls or compensation of employees; and Contractor hereby agrees to
indemnity and save harmless Railroad Company from any and all liability, cost or
expense arising or growing out of Contractor's compliance or failure to comply with the
provisions of any such law connected with the performance of this Agreement.

c) Reimbursement to Railroad Company for Misloaded Units
If Contractor misloads trailers/containers to the wrong destination or fails to load a
scheduled unit to its proper destination, Contractor shall reimburse Railroad Company for
all costs incurred by Railroad Company to forward the trailers/containers to the proper
destination utilizing such means of forwarding as Railroad Company shall deem
necessary in its sole discretion to meet service requirements. The foregoing shall not
apply if the Unit is misrouted or misloaded as a result of incorrect loading instructions
from the Railroad Company. In addition to the costs described above, Contractor shall
pay Railroad Company $500 for each trailer/container misloaded as defined in this
section as liquidated damages to compensate Railroad for its administrative costs
incurred in addressing the situation and the damage done to the relationship of Railroad



**BNSF**

and its customer as a result of such misloading.

d) Reimbursement To Railroad Company for Expenses Incurred
   If Contractor fails to perform or complete any services it is required to perform hereunder
   in a timely and appropriate manner, Railroad Company shall have the right to have such
   service performed by persons or entities other than Contractor, and Contractor shall
   reimburse Railroad Company for all expenses incurred by Railroad Company in securing
   such substitute performance. Except in emergency cases, Railroad Company will give
   Contractor thirty (30) days written notice of Railroad Company's intention to utilize a
   person or entity other than Contractor to perform a service. Railroad's right to recover
   such expenses shall be in addition to any other rights and remedies Railroad may have
   with respect to Contractor's breach of its contractual obligations hereunder.

e) Reimbursement To Railroad Company for Improperly Loaded or Secured Units
   If Railroad Company discovers a trailer/container has not been properly loaded or
   secured to the railcar or chassis, Contractor shall reimburse Railroad Company the sum
   of $500 for each such improperly loaded or secured trailer/container as liquidated
   damage to compensate Railroad for its administrative costs incurred in addressing the
   situation and the damage done to the relationship of Railroad and its customers as a
   result of such act by Contractor. This charge shall be in addition to any other rights and
   remedies of Railroad Company under Sections 6(a)(iv) and 9(d)(iii) of this Agreement or
   as the law may otherwise provide.

f) Reimbursement To Railroad Company for Incorrect Data By Contractor
   If Railroad Company discovers that Contractor has furnished incorrect data regarding
   ramping/deramping or train release times, the following liquidated damages shall be
   assessed:

   i) If Contractor does not have a performance incentive program in effect, the first such
      instance shall result in Railroad Company's right to assess Contractor a $500 charge
      to compensate Railroad for its administrative costs in addressing the situation for
      each unit misreported in that month. Any subsequent instances shall result in
      Railroad Company's right to immediately terminate this Agreement under Section
      9(d)(vi) below.

   ii) If Contractor does have a performance incentive program in effect, the first such
       instance shall result in Railroad Company's right to suspend Contractor's participation
       in, and Railroad Company's obligation for payment under, such performance incentive
       program for a period of three (3) months. Any subsequent instances shall result in
       Railroad Company's right to immediately terminate this Agreement under Section
       9(d)(vi) below.

g) Reimbursement to Railroad Company for Billings Pursuant to Section 6
   Railroad Company shall invoice Contractor for any amounts pursuant to Section 6 of this



**BNSF**

Agreement. Such invoices from Railroad Company shall include appropriate documentation supporting the charges. Contractor shall pay said invoices within thirty (30) days of receipt.

h) <u>Reimbursement to Railroad Company for Yard Damage</u>

1. BNSF will cover the cost to repair certain owners and damage job code/condition code pairs that are not associated with contractor caused damage.

2. BNSF will bill RTS $34,000 a month ($400K annually) for damages that, on average, they are currently responsible for. This expense will be included in the Corwith financial statements and is considered a cost of doing business in the annual reconciliation process.

3. BNSF will provide a "damage deductible" to RTS of $3.49 per lift on applicable job code/condition codes that are associated with contractor damage. RTS will be responsible for damages above the deductible that are RTS Responsible items as listed below.

4. BNSF will share with RTS the benefit of every dollar of avoided damage repair cost below the "damage deductible" level. The sharing rate would be $.50 of every $1.

5. BNSF would pay RTS $5 for every J2 subject to certain conditions. (1 year term only)

Term would coincide with Ramp/Deramp contract, except as noted above on item #5. True up would be performed annually, with quarterly reviews/audits.

**BNSF Responsible**

| Responsibility | Job Category |
|---|---|
| BNSF | BRAKES & AIR SYSTEM |
| BNSF | CHASSIS UNIQUE ITEMS |
| BNSF | CLEANING |
| BNSF | CONTAINER UNIQUE ITEMS |
| BNSF | DECALS, MARKINGS, LOGOS |
| BNSF | DOORS & HARDWARE |
| BNSF | ELECTRICAL, LIGHTS, REFLECTIVE TAPE |
| BNSF | GRID SECTION & CROSSMEMBERS |
| BNSF | ICC BUMPER AREA |
| BNSF | INTERIOR |
| BNSF | TIRES & RIMS |



**BNSF**

RTS @ Corwith effective Sep 1, 2004

### RTS Responsible

| Responsibility | Job Category |
|---|---|
| RTS | LANDING LEGS |
| RTS | NOSE |
| RTS | RAILS |
| RTS | ROOF |
| RTS | SIDE |
| RTS | TANDEM |
| RTS | RTS Damage |

**Damage Proposal:**

Damage Cost Sharing                    $2,091,776    $3.49/lift

**Sharing Examples:**

| Share Amount | Spread | RTS Share | BNSF Share |
|---|---|---|---|
| $2,091,776 | $0 | $0 | $0 |
| $1,991,776 | $100,000 | $50,000 | $50,000 |
| $1,891,776 | $200,000 | $100,000 | $100,000 |
| $1,791,776 | $300,000 | $150,000 | $150,000 |
| $1,691,776 | $400,000 | $200,000 | $200,000 |
| $1,591,776 | $500,000 | $250,000 | $250,000 |

**J2 Incentive:**

BNSF will pay RTS $5 for each J2 as long as 85% of all J2's written are confirmed by quarterly CCIB inspection (inspection costs paid by RTS).

## 3) CONTRACTOR AND EMPLOYEES

a) Independent Status

It is the intention of Railroad Company and Contractor that Contractor shall at all times be and operate as an independent contractor to Railroad Company and nothing herein contained shall be construed as inconsistent with that status. Contractor shall employ, direct, and supervise all persons performing any service hereunder, and such persons shall be and remain the sole employees of and subject to the control, direction, and supervision of Contractor, and not the employees of nor subject to direction, control, and supervision of Railroad Company. Contractor shall provide uniforms and employee identification for all of its personnel performing lift equipment maintenance services.



**BNSF**

b) Contractor's Employees

Contractor shall have a background investigation performed on all of its employees who will be performing any services under this Agreement. If available, Contractor may utilize the pre-negotiated Railroad Company pricing structure. Utilization of electronic background check providers shall be subject to prior written approval of Railroad Company. At a minimum, background investigations will include a social security trace, employment verification consisting of a maximum of five (5) previous employers in the previous seven (7) years, as well as a statewide and county criminal check for all states and counties of residence, both permanent and temporary, and employment in the previous seven (7) years. Contractor shall obtain consent from its applicants to allow Railroad Company to review the results of the background check. Contractor shall not permit any of its employees who are or have been convicted of larceny, theft, the unlawful taking of another's property, or any felony to perform services hereunder.

Contractor shall ensure its employees; subcontractors and agents are United States citizens or legally working in this country under a work VISA.

## 4) AUTHORITY TO ENTER RAILROAD PROPERTY

Contractor, its employees, subcontractors or agents will be authorized to enter Railroad property during regular business hours to perform services to be rendered under this Agreement. In the event of emergencies or any other requirement for Contractor's services other than during regular business hours, arrangements to enter Railroad property must be made through the designated contact for Contractor's presence on Railroad property. It is understood by Contractor, that Railroad property is a secure environment upon which Railroad Company has valuable business assets and non-public business information which is not for release to the general public. Contractor shall only permit its employees, subcontractors and agents access to Railroad property when such employees, subcontractors or agents are on the property for the purpose of performing services pursuant to this Agreement.

## 5) SAFETY, ENVIRONMENTAL, AND COMPLIANCE WITH RULES AND PROCEDURES

a) Contractor and Contractor's officers, agents, invitees, and employees shall comply with safety and environmental rules, traffic control requirements, speed limits, and operating policies and additional procedures as may be published, issued, or posted by Railroad Company as applicable to the Terminal (and as such rules and requirements may from time to time be revised and published or posted by Railroad Company), including without limitation rules regarding personal protective equipment, reflective vests, safety glasses, steel toed footwear with proper ankle support, and protective headwear. The use of headwear shall be mandatory for all groundmen. All Contractor's yard vehicles utilized at the Terminal shall be equipped with operable emergency flashers and flashing strobe lights, and with approved steel cage or bars as prescribed in the BNSF Hub Operation



**BNSF**

Manual. Violation of such safety rules, traffic control requirements, speed limits, and operating policies and procedures by Contractor shall be deemed a material breach of this Agreement by Contractor, and Railroad Company may terminate this Agreement following such violation pursuant to Section 9(b) of this Agreement, provided that written notice is given to Contractor and Contractor has been given thirty (30) days to correct such violations.

b) Contractor shall notify Railroad Company immediately upon the occurrence of any accident or other event involving personal injury or property damage at the Terminal. Failure to notify Railroad Company within one hour of an incident will result in an assessment of up to $5000 penalty.

c) Within ninety (90) days of the Effective Date, the Contractor shall prepare and implement an Environmental Management Plan which identifies (i) any necessary permits, licenses or other notifications to be obtained by Contractor; (ii) any waste streams or waste materials and how they will be handled and disposed of, including but not limited to, storm water, used tires, batteries, waste water, used oil, dunnage, scrap and packaging, (iii) emergency response procedures; (iv) all required and voluntary environmental training; and (v) such records and documents necessary to demonstrate compliance with the Plan. The Plan shall be maintained at the Terminal. Upon request, the Environmental Management Plan will be submitted to Railroad Company for review. The review of such Environmental Management Plan by Railroad Company shall not constitute approval or compliance with Contractor's obligation under paragraph 6(e). Additionally, Railroad Company may periodically perform Environmental Audits of the Terminal. If deficiencies are discovered as a result of the Environmental Audit, or through any other means, then the Contractor will be required to submit an Action Plan to Railroad Company as soon as possible, but no later than fourteen (14) calendar days from discovery which identifies each deficiency, the responsible party for corrective action, the corrective action required, and a milestone schedule. The milestone schedule must include a schedule of corrective action required; and a schedule for progress reports. The progress reports will be submitted to Railroad Company in accordance with the milestone schedule. In addition to the Action Plan requirement, any deficiencies found through the Contractor's self audits must be reported within twenty four (24) hours to the Terminal's Railroad Company Regional Director and Railroad Company at 1 800 832 5452. Under no circumstances will Contractor permit or suffer to be permitted a treatment, storage or disposal facility or underground storage tank, as those terms are defined in the Resource Conservation and Recovery Act.

d) Prior to entering Railroad property, Contractor providing labor, material, supervision or services for the work to be performed under this Agreement shall secure, review and at all times comply with Railroad Company's safety, environmental and compliance rules, including without limitation, Railroad Company's Vision and Values statement, and other internal and external publications shall guide the Contractor. The Contractor shall adhere to the following BNSF internal publications: 1) various BNSF safety rule publications



RTS @ Corwith effective Sep 1, 2004

(Employee Safety Rules and Mechanical/ P&M Safety Rules, 2) BNSF Code of Conduct, 3) Records Retention Schedule, 4) BNSF Environmental Manual, and 5) Intermodal Hub Operations Manual, 6) North American Emergency Response Guidebook, 7) Bureau of Explosives Tariff No. BOE-6000, 8) AAR Intermodal Interchange Rules, 9) TTX Equipment Guide (car loading restrictions), 10) AAR circulars, 11) TTX Hitch Maintenance Guide, and 12) AAR Intermodal Trailer Securement Manual. The Railroad Company safety rules are also posted at:

www.bnsf-ttc.com/bnsftime/Emplsafe.hmtl

## 6) LIABILITY AND COMPLIANCE WITH LAWS

a) Indemnity
**TO THE FULLEST EXTENT PERMITTED BY LAW, CONTRACTOR SHALL RELEASE, INDEMNIFY, DEFEND AND HOLD HARMLESS RAILROAD COMPANY AND RAILROAD COMPANY'S AFFILIATED COMPANIES, PARTNERS, SUCCESSORS, ASSIGNS, LEGAL REPRESENATIVES, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS (COLLECTIVELY, "INDEMNIFIED PARTIES") FOR, FROM AND AGAINST ANY AND ALL CLAIMS, LIABILITIES, FINES, PENILITIES, COSTS, DAMAGES, LOSSES, LIENS, CAUSE OF ACTION, SUITS, DEMANDS, JUDGMENTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, COURT COST, ATTORNEYS' FEES AND COSTS OF INVESTIGATION, REMOVAL AND REMEDIATION AND GOVERNMENTAL OVERSIGHT COSTS) ENVIRONMENTAL OR OTHERWISE (COLLECTIVELY "LIABILITIES") OF ANY NATURE, KIND OR DESCRIPTION OF ANY PERSON OR ENTITY DIRECTLY OR INDIRECTLY ARISING OUT OF, RESULTING FROM OR RELATED TO (IN WHOLE OR IN PART):**

i) Theft, embezzlement or defalcation on the part of Contractor, or any of Contractor's agents or employees;

ii) Theft by third persons of containers/trailers or their contents as a result of improper checkpoint procedures on the part of Contractor. Contractor is not responsible for security at the Terminal and shall only be liable for the acts or omissions of its employees or agents, or for theft by third persons of containers/trailers or their contents as a result of improper checkpoint procedures on the part of Contractor;

iii) Loss, damage to, or destruction of containers/trailers/chassis or their contents caused by improper procedures or lack of reasonable care on the part of Contractor, regardless of whether such ensuing loss, damage or destruction occurs within the Terminal. It shall be Contractor's responsibility to conduct a visual inspection of all vehicles upon arrival at the Terminal. Contractor shall immediately advise Railroad Company of any loss or damage detected to vehicles or contents during such inspections, and shall furnish photographs and proper reporting of such loss or



**BNSF**

damage;

iv) Contractor's failure to accomplish proper loading or securement of a trailer/ container to the chassis or the railcar, regardless of inspections of such equipment performed by Contractor and Indemnified Parties, and regardless of whether such ensuing loss, damage or destruction occurs within the Terminal - excluding cases of equipment defects. This provision explicitly includes any and all costs of any traffic accident or derailment, which such lack of proper loading or securement may cause;

v) Injury to or death of any person, including employees of either Contractor or Railroad Company, or loss, destruction of, or damage to any property arising directly or indirectly, in whole or in part, from the actions or omissions of Contractor or its employees. This provision expressly includes, but is not limited to, remediation of any contamination or other environmental damage. It shall be Contractor's responsibility to conduct a visual inspection of all trailers/containers/chassis upon arrival at the Terminal and prior to commencing a move. Contractor shall immediately advise Railroad Company of any loss or damage detected to trailers/containers/chassis or contents during such inspections, and shall furnish photographs of such loss or damage; and

vi) Contractor's failure to comply with any applicable local, state or federal laws or regulations.

**EVEN IF SUCH LIBILITIES ARISE FROM OR ARE ATTRIBUTED TO, IN WHOLE OR IN PART, ANY NEGLIGENCE OF ANY INDEMNIFIED PARTY, THE ONLY LIABILITIES WITH RESPECT TO WHICH CONTRACTOR'S OBLIGATION TO INDEMNIFY THE INDEMNIFIED PARTIES DOES NOT APPLY ARE LIABILITIES TO THE EXTENT PROXIMATELY CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF AN INDEMNIFIED PARTY.**

b) **TO THE FULLEST EXTENT PERMITTED BY LAW, CONTRACTOR FURTHER AGREES REGARDLESS OF ANY NEGLIGENCE OR ALLEGED NEGLIGENCE OF ANY INDEMNIFIED PARTY TO INDEMNIFY, AND HOLD HARMLESS THE INDEMNIFIED PARTIES AGAINST AND ASSUME THE DEFENSE OF ANY LIABILITIES ASSERTED AGAINST OR SUFFERED BY ANY INDEMNIFIED PARTY UNDER OR RELATED TO THE FEDERAL EMPLOYEES' LIABILITY ACT ("FELA") WHENEVER EMPLOYEES OF CONTRACTOR OR ANY OF ITS AGENTS, INVITEES, SUBCONTRACTORS CLAIM OR ALLEGE THAT THEY ARE EMPLOEES OF ANY INDEMNIFIED PARTY OR OTHERWISE. THIS INDEMNITY SHALL ALSO EXTEND, ON THE SAME BASIS, TO FELA CLAIMS BASED ON ACTUAL OR ALLEGED VIOLATIONS OF ANY FEDERAL, STATE OR LOCAL OR REGULATIONS, INCLUDING BUT NOT LIMITED TO THE SAFETY APPLIANCE ACT, THE BOILER**


**BNSF**

**INSPECTION ACT, THE OCCUPATIONAL HEALTH AND SAFETY ACT, THE RESOURCE CONSERVATION AND RECOVERY ACT, AND ANY SIMILAR STATE OR FEDERAL STATUTE.**

c) <u>Loss of or Damage to Railroad Company Property</u>
All property provided by Railroad Company for Contractor's use during the term of this Agreement, whether personal or real property, shall be returned to Railroad Company at the time of termination or expiration of this Agreement in the same condition it was received, normal wear and tear excepted. This provision shall include, but not be limited to, lift equipment, office space and equipment, and computer equipment (including Oasis units). Additionally, during the term of this Agreement, Contractor shall, within thirty (30) days, replace any loss or repair any damage to the above noted property. Any costs to restore such property to its condition prior to the time of its loss or damage shall be the responsibility of Contractor.

d) <u>Notice and Defense</u>
In the event any claim or suit is brought against the Indemnified Parties for which Contractor is responsible under the preceding Section 6(a), or in the event any claim or suit is brought against the Indemnified Parties arising out of work performed, materials furnished, or other activities conducted under the terms of this Agreement, for which Contractor is responsible under the provisions of this Agreement, Railroad Company shall give Contractor reasonable notice in writing of the pendency of such claims or suit, and upon receipt of such notice, Contractor shall forthwith assume the defense of such claim or suit, and shall save and hold harmless the Indemnified Parties from all loss, cost, expense and liability by reason thereof. If Contractor fails to assume the defense of a claim or suit for which Contractor is responsible under the provisions of this Agreement, Contractor shall be bound by the resulting judgment or Railroad Company's settlement as to all matters which could have been compromised or litigated in such suit by Contractor.

Upon written notice from the Railroad Company, Contractor agrees to assume the defense of any lawsuit or other proceeding brought against any Indemnified Party by any entity, relating to any matter covered by this Agreement for which Contractor has an obligation to assume liability for and/or save and hold harmless any Indemnified Party. Contractor shall pay all costs incident to such defense, including, but not limited to, attorneys' fees, investigators' fees, litigation and appeal expenses, settlement payments, and amounts paid in satisfaction of judgments.

e) <u>Compliance with Laws</u>
In the performance of the work hereunder, Contractor shall comply with all applicable federal and state enactments, including without limitations, those with reference to employer's liability, worker's compensation and worker's liability insurance and (when requested by the Railroad Company) shall furnish proof of such compliance. Contractor shall also, at all times, comply strictly with all other laws, rules, regulations and ordinances--state, federal or municipal--applicable to operations and services to be performed by Contractor, including, without limitation, laws, rules, regulations or


**BNSF**

ordinances that would apply to storage or use by Contractor at the Terminal of hazardous materials or hazardous wastes, and laws, rules, regulations or ordinances pertaining to vehicle licensing requirements. Contractor shall keep abreast of current and new laws, rules, regulations and ordinances that affect operations at the Terminal, and shall promptly advise Railroad Company of any significant changes or developments therein.

f) Notwithstanding any other provision in this Agreement to the contrary, neither party shall be liable, nor shall it indemnify the other party, for any damage, bodily injury or breach of this Agreement to the extent proximately caused by wars, hostilities, public disorders, acts of public enemies, area-wide industry labor disputes, failure of utility services, acts of God, governmental regulation or intervention, or other like causes beyond a party's control, so long as, in each case, the resulting damage, injury or breach arose through no fault of the party seeking to be relieved of its obligations.

## 7) INSURANCE

a) For the entire term of this Agreement, Contractor shall maintain insurance coverage as described below, at Contractor's expense, covering all of the work and services to be performed hereunder by Contractor and each of its subcontractors.

Commercial General Liability insurance that contains broad form contractual liability coverage, including but not limited to Public Liability, Personal Injury, Property Damage, and Contractual Liability with coverage of at least $5,000,000 per occurrence and $10,000,000 in the aggregate. Coverage must be purchased on a post 1998 Insurance Service Offices (ISO) occurrence form or equivalent and includes coverage for, but not limited to:

i) bodily injury and property damage,

ii) personal injury and advertising injury,

iii) fire legal liability, and

iv) products and completed operations coverage

This policy shall also contain the following endorsements which shall be indicated on the certificate of insurance:

i) Workers' compensation exclusion does not apply to Railroad Company payments related to the Federal Employers Liability Act or a Railroad Company Wage Continuation Program or similar programs and any payments made or deemed not to be either payments made or obligations assumed under any Workers Compensation, disability benefits, unemployment compensation law or similar law.



ii) The definition of insured contract shall be amended to remove any exclusion or other limitation for any work being done within 50 feet of Railroad Company property.

iii) Any exclusions related to the explosion, collapse or underground hazards must be removed from the policy.

iv) No other endorsements limiting coverage in respect to the obligations under the Agreement shall be included in the policy.

<u>Business Automobile Liability insurance</u> that contains a combined single limit of at least $2,000,000 per occurrence, and including coverage for, but not limited to, bodily injury and property damage and all vehicles owned, scheduled, used or hired.

<u>Workers' Compensation and Employer's Liability insurance</u> as may be required by State Law (but if optional under State Law, the insurance must nevertheless cover all employees), including coverage for the Federal Employer's Liability Act for persons hired by, on the payroll of, or whose services are otherwise paid for, directly or indirectly, by Contractor and including an Alternate Employer endorsement naming The Burlington Northern and Santa Fe Railway Company as the alternate employer with coverage for the Federal Employer's Liability Act. The term "Alternate Employer" as used herein and above is being used solely as an insurance term of art. By Contractor's actions of obtaining insurance coverage as set forth above, Contractor is in no way intending or evidencing an alternate or dual employment relationship with The Burlington Northern and Santa Fe Railway Company. The parties agree: (1) Railroad Company has no right to direct or control Contractor's employees with respect to the physical conduct of the performance of services; (2) Railroad Company does not supervise, nor does it have the right to supervise details of Contractor's employees' work or in the manner such work is accomplished; (3) Railroad Company retains no control over the details of the Contractor's employees' work; and (4) Railroad Company has no right to select, hire, train or fire Contractor's employees. The workers' compensation policy must also be endorsed to include FELA and Alternate Employer endorsement. **THE CERTIFICATE MUST CONTAIN A SPECIFIC WAIVER OF THE INSURANCE COMPANY'S SUBROGATION RIGHTS AGAINST THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY.**

<u>All Risks Property insurance</u> including property in the Contractor's care, custody and control on a replacement cost basis. Such insurance shall have a waiver of subrogation in favor of The Burlington Northern and Santa Fe Railway Company and name The Burlington Northern and Santa Fe Railway Company as a loss payee.

b) <u>Other Requirements:</u>

Where allowable by law, all policies (applying to coverage listed above) shall contain no exclusion for punitive damages and certificates of insurance shall reflect that no exclusion exists.

Contractor agrees to waive its right of recovery against Railroad Company for all claims



and suits against Railroad Company. In addition, its insurers, through the terms of the policy or policy endorsement, waive their right of subrogation against Railroad Company for all claims and suits. The certificate of insurance must reflect the waiver of subrogation endorsement. Contractor further waives its right of recovery, and its insurers also waive their right of subrogation against Railroad Company for loss of its owned or leased property or property under Contractor's care, custody or control.

Contractor's insurance policies through policy endorsement must include wording which states that the policy shall be primary and non-contributing with respect to any insurance carried by Railroad Company. The certificate of insurance must reflect that the above wording is included in evidenced policies.

All policy (ies) required above (excluding Workers' Compensation and if applicable, Railroad Protective) shall include a severability of interest endorsement and Railroad Company shall be named as an additional insured with respect to work performed under this Agreement. Severability of interest and naming as additional insured shall be indicated on the certificate of insurance.

Contractor is not allowed to self-insure without the prior written consent of Railroad Company. If granted by Railroad Company, any deductible, self-insured retention or other financial responsibility for claims shall be covered directly by contractor in lieu of insurance. Any and all Railroad Company liabilities that would otherwise, in accordance with the provisions of this Agreement, be covered by Contractor's insurance will be covered as if contractor elected not to include a deductible, self-insured retention or other financial responsibility for claims.

Prior to commencing the Work, contractor shall furnish to Railroad Company an acceptable certificate(s) of insurance including an original signature of the authorized representative evidencing the required coverage, endorsements, and amendments and referencing the contract audit/folder number if available. The policy(ies) shall contain a provision that obligates the insurance company(ies) issuing such policy(ies) to notify Railroad Company in writing at least thirty (30) days prior to any cancellation, non-renewal, substitution or material alteration. This cancellation provision shall be indicated on the certificate of insurance. In the event of a claim or lawsuit involving Railroad Company arising out of this Agreement, Contractor will make available any required policy covering such claim or lawsuit.

Any insurance policy shall be written by a reputable insurance company acceptable to Railroad Company or with a current Best's Guide Rating of A- and Class VII or better, and authorized to do business in the state(s) in which the service is to be provided.

Contractor represents that this Agreement has been thoroughly reviewed by Contractor's insurance agent(s)/broker(s), who have been instructed by Contractor to procure the insurance coverage required by this Agreement. Allocated Loss Expense shall be in addition to all policy limits for coverage's referenced above.

Not more frequently than once every five (5) years, Railroad Company may reasonably



modify the required insurance coverage to reflect then-current risk management practices in the railroad industry and underwriting practices in the insurance industry.

If any portion of the operation is to be subcontracted by Contractor, Contractor shall require that the subcontractor provide and maintain insurance coverage's as set forth herein, naming Railroad Company as an additional insured, and shall require that the subcontractor release, defend and indemnify Railroad Company to the same extent and under the same terms and conditions as Contractor is required to release, defend and indemnify Railroad Company herein.

Failure to provide evidence as required by this section shall entitle, but not require, Railroad Company to terminate this Agreement immediately. Acceptance of a certificate that does not comply with this section shall not operate as a waiver of Contractor's obligations hereunder.

The fact that insurance (including, without limitation, self-insurance) is obtained by contractor shall not be deemed to release or diminish the liability of contractor including, without limitation, liability under the indemnity provisions of this Agreement. Damages recoverable by Railroad Company shall not be limited by the amount of the required insurance coverage.

For purposes of this section, Railroad Company shall mean "Burlington Northern Santa Fe Corporation", "The Burlington Northern and Santa Fe Railway Company" and the subsidiaries, successors, assigns and affiliates of each.

General Insurance Premiums:

> An initial rate of 3.5% of wages will be charged by Contractor to cover actual expenses associated with the following policies of insurance:
> (1) General Liability coverage, including bodily injury, property damage and sudden and accidental pollution coverage arising from such operations.
> (2) Auto Liability coverage for any vehicles licensed for on-road use.
> (3) Excess and/or Umbrella liability policies

It is the intent of the parties that this rate will remain unchanged for the duration of the agreement with the following exception: In the event of a material change in either loss experience resulting from operations at Corwith or an increase in overall insurance premiums due to catastrophic events outside the control of RTS, then the parties agree to renegotiate this rate with RTS to provide supporting documentation as the basis for such a change.

Property Damage/Liability Claims:

> An initial rate of 4.1% of wages will be charged by Contractor to cover the actual cost of all third party bodily injury/property damage claims occurring within the RTS deductible level (currently at $100,000 per claim for all third party claims). The initial term will be for a partial year from the effective date of this agreement



**BNSF**

through December 31, 2004 and on an annual basis thereafter.

Each year end, RTS will reconcile the actual claims experience (total incurred losses) in the preceding year with this accrual to achieve a "break-even" situation.

This adjustment to actual cost will occur each year, represented in the December financials and will be made prior to the determination of the overall operational cost reconciliation explained in ITEM 2 COMPENSATION.

BNSF responsibility will be limited to claims incurred during the contracted term.

Worker's Compensation:

Worker's Compensation coverage will be charged by Contractor at an initial rate of 18% of wages. This charge will include not only claims reserves, (both paid and outstanding) but will also include all direct costs and fees associated with this coverage, including taxes, assessments, excess insurance premiums, claims administration fees, etc.) The initial term will be for a partial year from the effective date of this agreement through December 31, 2004 and on an annual basis thereafter.

On an annual basis – and based upon losses valued as of 12/31 of each subsequent year, this rate will be adjusted based upon actual experience and will be sufficient to cover all costs and expenses associated with the worker's compensation coverage.

This adjustment to actual cost will occur each year, represented in the December financials and will be made prior to the determination of the overall operational cost reconciliation explained in ITEM 2 COMPENSATION.

BNSF responsibility will be limited to claims incurred during the contracted term.

GAIN/LOSS ON CAPITAL ASSETS

Railroad Company will only realize gain or loss on assets purchased after the initial effective date of this contract and disposed of prior to contract termination.

## 8) SUCCESSORS AND ASSIGNS

This Agreement shall inure to and bind the legal representatives, successors and assigns of the parties hereto; provided, however, that any assignment or subletting of this Agreement or any interest herein by Contractor, without first obtaining the written consent of Railroad Company, shall be void and of no effect.



**BNSF**

## 9) TERM AND TERMINATION

a) This Agreement shall take effect September 1, 2004 and shall remain in effect through the various dates specified in Schedule A hereto; provided, however:

b) Railroad Company may at any time, terminate this Agreement following a material breach or default by Contractor or if Railroad Company determines in its sole discretion, that Contractors services are substandard. In order to invoke termination under this clause, Railroad Company shall submit, in writing, its grievances to Contractor and thereafter give Contractor thirty (30) days from the date of the writing to correct the problems. If, at the end of the thirty (30) day cure period, Contractor has not in the Railroad Company's opinion corrected the problems, Railroad Company may terminate this Agreement by providing written notice effective immediately.

c) Both Railroad Company and Contractor may for any reason terminate this Agreement by giving the other respective party not less than 60 days written notice of termination.

d) Notwithstanding the provisions of Section 9(c), Railroad Company may terminate this Agreement at any time immediately upon written notice to Contractor for any of the following reasons:

   i) Any adverse legislative order or rule of any governmental authority;

   ii) In the event of the cancellation of Contractor's insurance required under Section 7 of this Agreement;

   iii) In the event it is determined after investigation (in which Contractor has the right to participate) that Contractor did not properly load or secure a container or trailer to a railcar or did not properly load or secure a container to a chassis;

   iv) In the event Railroad Company determines that continued retention of Contractor will cause or exacerbate any labor dispute(s), whether or not such dispute(s) would result in interruptions of service at Railroad Company's Terminal;

   v) In the event Contractor fails to perform services hereunder, whether such failure is due to strike, lockout, labor disturbance, or otherwise, and such failure causes or threatens to cause interruptions in Railroad Company's service at the Terminal; or

   vi) The second instance whereby Railroad Company discovers Contractor has furnished incorrect data regarding deramping or train release times.

   vii) If Railroad determines in its sole discretion that Contractor is performing its services in an unsatisfactory manner.

e) The termination or expiration of this Agreement will not affect or impair the rights or obligations of either party arising under this Agreement prior to such termination or



RTS @ Corwith effective Sep 1, 2004

expiration.

## 10) FORCE MAJEURE

In the event either Railroad Company or Contractor is unable, due to acts of God, including but not limited to flood, earthquake, hurricane, tornado, or other severe weather or climatic conditions; acts of a public enemy, war, blockade, insurrection, vandalism or sabotage; governmental law, order or regulation; or a mechanical failure or derailment, to fulfill its obligations under this Agreement, it shall be excused therefrom without penalty for the duration of such disability. Any party invoking the provisions of this section shall exercise due diligence to eliminate such Force Majeure occurrence. Railroad Company and Contractor will use their best efforts to continue to operate without computers or computer communications; notwithstanding the existence of Force Majeure to the extent such continued operation is practical.

## 11) NON-DISCRIMINATION

The non-discrimination clauses contained in Section 202 of The Executive Order 11246 as amended, relative to equal employment opportunity for all persons without regard to race, creed, color or national origin, and implementing rules and regulations of the President's Committee on Equal Employment Opportunity are incorporated herein. The affirmative action clause pertaining to employment of the handicapped contained in 41 C.F.R. 60-741.4 issued under the authority of Section 503 of the Rehabilitation Act of 1973, as amended, is hereby incorporated by reference. The affirmative action clause pertaining to employment of disabled veterans and veterans of the Vietnam era contained in 41 C.F.R. 60-250.4 issued under the authority of the Vietnam Era Veterans Readjustment Assistance Act of 1974, is hereby incorporated by reference.

**IN WITNESS WHEREOF**, each of the parties hereto has caused this Agreement to be executed by its duly authorized officer, in triplicate, as of the day and year first above written.

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY

_____
(Name Signed)

_John P. Lonigan, Jr._
(Name Printed)

_Executive VP & CMO_
(Title)


**BNSF**

RTS @ Corwith effective Sep 1, 2004

**RAIL TERMINAL SERVICES L.L.C.**

_____
**(Name Signed)**

MARK DAVIS
_____
**(Name Printed)**

VP .
_____
**(Title)**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2012, I electronically filed the foregoing Supplemental Appendix of Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit via the Court's CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system upon the following counsel:

Nicholas C. Kefalos
Verner Moran, LLC
27 North Wacker Drive
Suite 2000
Chicago, IL 60606-2800

Clifford Raymond Perry, III
Laner, Muchin, Dombrow,
Becker, Levin & Tominberg, Ltd.
515 North State Street
Suite 2800
Chicago, IL 60654

Jeffrey Andrew Bartos
Guerrieri, Clayman, Bartos &
Parcelli, P.C.
1625 Massachusetts Ave., N.W.
Suite 700
Washington, DC 20036

By:  s/ Donald J. Munro
        Donald J. Munro