No. 11-3705

---

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

TEAMSTERS LOCAL UNION NO. 705, *et al.*,

Plaintiffs-Appellants,

v.

BURLINGTON NORTHERN SANTA FE, LLC,
a Delaware limited liability company, *et al.*,

Defendants-Appellees.

---

Appeal From Final Judgment of
The United States District Court for the Northern District of Illinois
Case No. 1:10-cv-07378 (Hon. Samuel Der-Yeghiayan)

---

### BRIEF OF DEFENDANT-APPELLEE
### TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION

---

Jeffrey A. Bartos
N. Skelly Harper
GUERRIERI, CLAYMAN,
BARTOS & PARCELLI, P.C.
1625 Massachusetts Ave. N.W., Suite 700
Washington, DC  20036
Telephone: 202.624.7400
Facsimile:  202.624.7420
jbartos@geclaw.com
sharper@geclaw.com

Dated: August 15, 2012          *Counsel for Defendant-Appellee TCU*

# DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1 and Federal Rules of Appellate Procedure 12 and 26.1, undersigned counsel of record for Defendant-Appellee the Transportation Communications International Union ("TCU") provides as follows:

1. Jeffrey A. Bartos and N. Skelly Harper of the firm Guerrieri, Clayman, Bartos & Parcelli, P.C., appear in this Court for Defendant-Appellee the TCU.

2. The following law firms appeared for the TCU in the court below:

       Guerrieri, Clayman, Bartos & Parcelli, P.C.
       Hogan Marren, Ltd.

3. The TCU is an unincorporated association, has no parent corporation, and has issued no stock.

Dated: August 15, 2012
                    /s/ *Jeffrey A. Bartos*
                    Jeffrey A. Bartos
                    GUERRIERI, CLAYMAN,
                    BARTOS & PARCELLI, P.C.
                    1625 Massachusetts Ave. N.W., Suite 700
                    Washington, DC  20036
                    Telephone: 202.624.7400
                    Facsimile:  202.624.7420
                    jbartos@geclaw.com

                    *Attorney of Record for*
                    *Defendant-Appellee TCU*

STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee the Transportation Communications International Union respectfully submits that oral argument is not necessary, because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." FED. R. APP. P. 34(a)(2)(C). This case presents a straightforward matter controlled by well-settled precedent pursuant to which the district court properly dismissed this action in its entirety.

TABLE OF CONTENTS

DISCLOSURE STATEMENT...................................................................................i

STATEMENT REGARDING ORAL ARGUMENT.................................................. ii

TABLE OF AUTHORITIES...............................................................................iv

JURISDICTIONAL STATEMENT.......................................................................1

ISSUES PRESENTED ......................................................................................2

STATEMENT OF THE CASE ............................................................................3

    Nature of the Case ....................................................................................3

    Statement of Facts. ...................................................................................4

    Course of Proceedings and Disposition Below. ...........................................6

SUMMARY OF ARGUMENT .............................................................................9

ARGUMENT ..................................................................................................10

I.      Standard of Review..................................................................................10

II.     The Plaintiffs Failed to State a Claim Under Section 510 of ERISA.........11

      A.     TCU could not plausibly have taken any action to interfere
            with the Plaintiffs' employment or benefit status ............................12

      B.     TCU is not alleged to have had the specific intent of
            interfering with the Plaintiffs' benefits.............................................14

III.    The Plaintiffs Failed to State a Conspiracy Claim......................................17

CONCLUSION ...............................................................................................22

CERTIFICATE OF SERVICE ...........................................................................23

CERTIFICATE OF COMPLIANCE .....................................................................24

# TABLE OF AUTHORITIES

## Cases:

*Abbot v. Pipefitters Local Union No. 522 Hosp.*,
  94 F.3d 236 (6th Cir. 1996) ................................................................12

*Am. Inter–Fid. Exch. v. Am. Re–Ins. Co.*,
  17 F.3d 1018 (7th Cir. 1994) ..............................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................4, 10, 15

*Beck v. Prupis*,
  529 U.S. 494 (2000) ...........................................................................21

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................10, 15

*Cole v. Milwaukee Area Technical Coll. Dist.*,
  634 F.3d 901 (7th Cir. 2011) ..............................................................10

*Denney v. Eaton Corp.*,
  165 F.3d 31 (7th Cir. 1998) ................................................................20

*Feinberg v. RM Acquisition, LLC*,
  629 F.3d 671 (7th Cir. 2011) ........................................................12, 13

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical Coll. of Wis. Inc.*,
  657 F.3d 496 (7th Cir. 2011) ..............................................................19

*Hickey v. O'Bannon*,
  287 F.3d 656 (7th Cir. 2002) ..............................................................10

*Ingersoll-Rand Co. v. McClendon*,
  498 US 133 (1990) ..............................................................................17

*Inter-Modal Rail Employees Ass'n v. Atchison, Topeka and
  Santa Fe Ry. Co.*,
  80 F.3d 348 (9th Cir. 1996), *vacated by* 520 U.S. 510 (1997) .....................17, 18

*Lindemann v. Mobil Oil Corp.*,
  141 F.3d 290 (7th Cir. 1998) ........................................................14, 16

*Lucas v. PyraMax Bank, FSB,*
   539 F.3d 661 (7th Cir. 2008) ....................................................9, 11, 14

*Mass. Mut. Life Ins. Co. v. Russell,*
   473 U.S. 134 (1985) ........................................................................18

*Mattei v. Mattei,*
   126 F.3d 794 (6th Cir. 1997) .....................................................13, 17

*Moore v. Marketplace Restaurant, Inc.,*
   754 F.2d 1336 (7th Cir. 1985) .........................................................19

*Reich v. Continental Cas. Co.,*
   33 F.3d 754 (7th Cir. 1994) .............................................................19

*Slaney v. The Int'l Amateur Athletic Fed'n,*
   244 F.3d 580 (7th Cir. 2001) ..........................................................21

*Tarkowski v. Robert Bartlett Realty Co.,*
   644 F.2d 1204 (7th Cir. 1980) .........................................................19

*Tingy v. Pixey-Richards,*
   953 F.2d 1124(9th Cir. 1992) ..........................................................19

*Tolle v. Carroll,*
   977 F.2d 1129 (7th Cir. 1992) ....................................................10, 20

*Tricont'l Indus., Ltd. v. PwC LLP,*
   475 F.3d 824 (7th Cir. 2007) ..........................................................21

*Walker v. Thompson,*
   288 F.3d 1005 (7th Cir. 2002) .........................................................26

*Warner v. Buck Creek Nursery,*
   149 F. Supp.2d 246 (D. W.Va. 2001)................................................26

*West v. Butler,*
   621 F.2d 240 (6th Cir. 1980) ..........................................................13

<u>**Administrative Agency Decisions**</u>:

*Burlington Northern R.R. Co.,*
   18 NMB 240 (1991)........................................................................5, 6

*Delaware, Lackawanna & W. R.R. Co.*,
    2 NMB 98 (1952)....................................................................................5

*Nat'l R.R. Passenger Serv. Corp.*,
    31 NMB 178 (2004)..............................................................................5

**Federal Statutes**:

18 U.S.C.A. § 1962...............................................................................20

The Employment Retirement Income Security Act
    29 U.S.C. § 1001, *et seq.* ..............................................................*passim*

The Railway Labor Act
    45 U.S.C. § 151, *et seq.*...............................................................5, 20

**Rules**:

Fed. R. Civ. P. 12(b)(6) .......................................................................7, 10

## JURISDICTIONAL STATEMENT

The jurisdictional statement in the Appellants' Brief is complete and correct.

ISSUES PRESENTED

1.  Do the factual allegations of the Amended Complaint support a plausible inference that the TCU took an action with the specific intent of interfering with the Plaintiffs' benefits, as required to allege a violation of Section 510 of ERISA, 29 U.S.C. § 1140?

2.   Do the Plaintiffs have a legal basis to assert a separate conspiracy claim, and, if so, has such a claim been plausibly alleged against the TCU?[1]

---

[1]   The Plaintiffs raise as an issue for review an argument that some of the corporate Defendants can be held liable for ERISA violations of their corporate subsidiaries. *See* Appellants' Brief at 1 & 20-2. Because this issue does not involve the TCU, it will not be addressed in this brief.

## STATEMENT OF THE CASE

**Nature of the Case.** This case arises out of a decision by Defendant Burlington Northern Santa Fe Railroad ("BNSF") to end the outsourcing of work at its Corwith Intermodal Rail Yard ("Corwith Yard"), and to instead perform that work in-house using employees represented by Defendant Transportation International Communications Union ("TCU"). As a result of this decision, BNSF terminated its contract with its former outside contractor, Defendant Rail Terminal Services, Inc. ("RTS"). And after its contract with BNSF was rescinded, RTS ended its employment relationship with a number of individuals, many of whom are Plaintiffs in this case ("Individual Plaintiffs").

Plaintiff Teamsters Local Union 705 ("Local 705") was the union representative of RTS employees working at Corwith Yard, including the Individual Plaintiffs. As employees of RTS, the Individual Plaintiffs accrued benefits under plans that were the product of collective-bargaining between RTS and Local 705. When they were laid off by RTS, the Individual Plaintiffs were no longer able to accrue and vest benefits under those plans.

TCU's only connection to this course of events is its long-standing collective-bargaining relationship with BNSF as the exclusive representative of all BNSF employees performing "clerical and related" work throughout the United States, including such BNSF employees working at Corwith Yard and other intermodal facilities. Plaintiffs, however, state that their claims are "totally independent of and in no way relate[] to any Collective Bargaining Agreements" and that they

3

do not "relate to or depend upon any statements made in the context of any collective bargaining." App. at 15.

The Plaintiffs filed suit alleging that BNSF, RTS, related corporate entities of those two corporations, and the TCU violated Section 510 of the Employment Retirement Income Security Act ("ERISA"), which provides, in relevant part, that

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled … or for the purpose of interfering with the attainment of any right to which such participant may become entitled …

29 U.S.C. § 1140. The Defendants all moved to dismiss for failure to state a claim, and the trial court dismissed the action in its entirety.

**Statement of Facts.**[2] BNSF is a Class I freight railroad that operates throughout the United States. BNSF owns Corwith Yard, which is an intermodal facility in Chicago, Illinois. Intermodal facilities transfer standardized freight containers between different modes of transportation, such as trains, trucks, and ships. At Corwith Yard, this work involves transferring freight to and from BNSF trains. App. at 9.

Prior to 2000, BNSF operated Corwith Yard through its corporate subsidiary Santa Fe Terminal Services, LLC ("Santa Fe"). In 2000, BNSF entered into a contract with RTS, an unrelated corporate entity, to operate Corwith Yard. Local

---

[2]  Because the Plaintiffs appeal the dismissal of their Amended Complaint for failure to state a claim, all factual allegations in the Amended Complaint are accepted as true for purposes of this appeal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

705 was the recognized collective-bargaining representative of employees of both
Santa Fe (prior to 2000) and RTS (after 2000) working at Corwith Yard. The
employees of Santa Fe and RTS who worked at Corwith Yard were
not employees of BNSF. *Id.* at 8.

RTS had a collective-bargaining agreement with Local 705 that governed the
terms and conditions of employment of RTS employees working at Corwith Yard
("RTS-Local 705 CBA"). That contract provided a right to accrue benefits under
the terms of a collectively bargained pension plan ("RTS Pension Plan"), as well
as various health and welfare plans. *Id.* at 9.

In 2010, BNSF decided to directly operate Corwith Yard using its own
employees, instead of through its contract with RTS. Rather than transferring
them to other locations, RTS terminated the Individual Plaintiffs and other of its
employees after the cessation of its contract to operate that facility. Because
they were no longer employed by RTS, the Individual Plaintiffs no longer
accrued benefits under the RTS Pension Plan or any of the other collectively
bargained plans. *Id.* at 11.

BNSF is a "carrier" as defined by the Railway Labor Act ("RLA"), 45 U.S.C. §
151, *et seq.*, and its labor relations are therefore governed by that Act. *See
Burlington N. R.R. Co.,* 18 NMB 240, 260 (1991). Under the RLA, labor
organizations are generally certified to represent a "craft or class" of employees
"system-wide." *See, e.g., Nat'l R.R. Passenger Serv. Corp.*, 31 NMB 178, 189
(2004); *Delaware, Lackawanna & W. R.R. Co.*, 2 NMB 98 (1952). In other words,

a union generally represents all employees of a carrier throughout the country performing similar work.

The TCU has at all relevant times been the exclusive, systemwide representative of the "clerical and related" craft or class of BNSF employees. *See Burlington N. R.R. Co.,* 18 NMB at 260. This includes BNSF employees working at intermodal facilities like Corwith Yard. Accordingly, when BNSF began to operate Corwith Yard with BNSF employees "by operation of law [TCU] became the bargaining agent at Corwith." Appellants' Brief at 17.

**Course of Proceedings and Disposition Below.** On November 16, 2010, the Plaintiffs filed this action against BNSF, RTS, and various parents and affiliates of those two corporations. Short App. at 24. On January 18, 2011, the Plaintiffs filed an Amended Complaint, adding the TCU as a Defendant. App. at 2.

The Plaintiffs' First Claim for Relief is captioned "Interference with Employment Rights Protected Under ERISA and Retaliation." *Id.* at 15.  The Plaintiffs allege generally:

> Defendants decided … to intentionally interfere …. with putative Plaintiffs' employment relationship…, and their legitimate expectancy of continued direct employment … for the express purpose of depriving putative Plaintiffs of or reducing the levels of the ERISA-protected … benefits of their employment, … and in so acting Defendants were substantially motivated by benefits-avoidance motives in violation of ERISA §§ 510 and/or 511.

*Id.* at 16-7.

The Second Claim for Relief is captioned "civil conspiracy to violate ERISA rights." The Plaintiffs allege generally:

> acts of the Defendants evidence a common plan or scheme to interfere
> with, frustrate, discriminate, limit, or deny to Plaintiffs their full rights to
> which the Plaintiffs have and would have become entitled to under the
> ERISA pension and welfare plans adopted under collective bargaining
> agreements, as guaranteed by ERISA and federal law.

*Id.* at 19. The Plaintiffs do not reference any provision of ERISA or other legal authority in alleging this claim.

Thereafter, the Defendants all moved to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. After full briefing, the district court dismissed the Amended Complaint in its entirety. Short App. at 6-18.

The court first held that the Plaintiffs could not assert a claim under Section 511 of ERISA, which "imposes criminal penalties for certain ERISA violations … [and] is thus not applicable in the instant action." *Id.* at 9. The court then held that the various corporate parents and affiliates of RTS and BNSF were not proper Defendants because the "Plaintiffs have failed to allege sufficient facts to indicate any direct involvement in the alleged wrongdoing" by those corporate entities. *Id.* at 10. The court then turned to the two claims as asserted against RTS, BNSF, and TCU.

The court held that the Plaintiffs had failed to state a claim under Section 510 of ERISA. As against the TCU, the court held that "[t]here are not sufficient allegations to indicate that TCU participated in any way in the decision by RTS to terminate the employment of Individual Plaintiffs." *Id.* at 11. As against BNSF, the court similarly held that the allegations do not "plausibly suggest

that BNSF dictated to RTS what employees it would terminate or participated in the decision to terminate Individual Plaintiffs." *Id.* And as against RTS, the court held that the Plaintiffs "have not alleged facts to suggest that RTS acted with the requisite intent to unlawfully interfere with the Plaintiffs' ERISA rights or retaliate for the exercise of such rights." *Id.* at 14.

The court then held that the Plaintiffs had failed to state a viable conspiracy claim. The court held that the Plaintiffs could not "expand the scope of Section 510" by alleging a conspiracy claim under either federal or state law. *Id.* at 17. The court held that the Plaintiffs do not have a statutory right under ERISA to assert their conspiracy claim, that they cannot assert it under "federal common law," and that any state law claim would be preempted. *Id.* Additionally, the court held that the "Plaintiffs have not alleged sufficient facts to state a valid conspiracy claim" against any Defendant. *Id.* at 16.

Plaintiffs filed a timely appeal.

## SUMMARY OF ARGUMENT

The district court properly held that the Plaintiffs failed to allege a viable claim against any of the Defendants, and dismissal of the Amended Complaint should therefore be affirmed by this Court. With regard to TCU, the Plaintiffs' allegations do not support a claim under any legal theory.

A. *The Plaintiffs failed to state a claim under ERISA Section 510.* The Plaintiffs' primary claim alleging intentional interference with their benefits was properly dismissed. In order to state a claim under Section 510 of ERISA, a plaintiff's allegations must support a plausible inference (1) that the defendant took some action to "discharge, fine, suspend, expel, discipline, or discriminate against" them, (2) with the "specific intent" to interfere with their rights under that plan. *Lucas v. PyraMax Bank, FSB,* 539 F.3d 661, 668 (7th Cir. 2008). As against the TCU, the Plaintiffs failed to allege any facts supporting either requirement: TCU is not alleged even to have had the ability to take any of the listed actions, and the Plaintiffs concede that TCU did not have the requisite specific intent of interfering with their benefits.

B. *The Plaintiffs failed to state a conspiracy claim.* The Plaintiffs' fallback claim that the TCU entered into an unlawful conspiracy was also properly dismissed. The Plaintiffs have failed to cite any authority providing a legal basis for a separate conspiracy claim, and even if such a claim was cognizable, the factual allegations do not support a plausible inference that TCU participated in any scheme to interfere with the Plaintiffs' benefits.

9

ARGUMENT

## I.   Standard of Review.

Whether a complaint should be dismissed for failure to state a claim is a question of law subject to *de novo* review. *Cole v. Milwaukee Area Technical Coll.Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

Dismissal pursuant to FED. R. CIV. P. 12(b)(6) for "failure to state a claim upon which relief can be granted" is appropriate if a complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Plaintiffs are required to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, while the alleged facts must be assumed to be true, the Court need not "accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

## II.  The Plaintiffs Failed to State a Claim Under Section 510 of ERISA.

Section 510 of ERISA provides, in relevant part, that

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled … or for the purpose of interfering with the attainment of any right to which such participant may become entitled …

29 U.S.C. § 1140.[3]  In order to prove a violation of Section 510, a "participant or beneficiary" in an "employee benefit plan" must demonstrate that the defendant took some action to "discharge, fine, suspend, expel, discipline, or discriminate against" him or her, with the "specific intent" to interfere with his or her rights under that plan. *Lucas v. PyraMax Bank, FSB,* 539 F.3d 661, 668 (7th Cir. 2008).

Construed generously, the Plaintiffs allege that the TCU violated this provision by supporting BNSF's decision to stop outsourcing work at Corwith Yard, which in turn resulted in RTS terminating its employment relationship with the Individual Plaintiffs, and thereby negatively affecting the Individual Plaintiffs' rights under various plans that were the product of the RTS-Local 705 CBA.  App. at 15-9.

---

[3]  Although the Amended Complaint also references ERISA Section 511 (which is the criminal analogue to Section 510), the Plaintiffs do not challenge the trial court's proper dismissal of all claims based on that provision. Short App. at 9; *see also West v. Butler*, 621 F.2d 240, 244 (6th Cir. 1980) (no private right of action to assert violation of Section 511).

11

These allegation do not state a claim as a matter of law: Plaintiffs expressly disavow any claim based on the TCU's collective-bargaining relationship with BNSF; TCU is not alleged to have taken any action to interfere with the Plaintiffs' employment or benefit status; and the Plaintiffs disavow that TCU had the requisite intent to interfere with the Plaintiffs' benefits.

A.     TCU could not plausibly have taken any action to interfere with the Plaintiffs' employment or benefit status.

The Plaintiffs fail to state a claim under Section 510 of ERISA, because the TCU is not alleged to have taken (or even to have been able to take) any action within the scope of that provision.

Section 510 lists specific adverse actions required to prove a violation which can only be plausibly taken by a party who had the ability to directly determine a plaintiff's employment or benefit status: "discharge, fine, suspend, expel, discipline, or discriminate against." *See* 29 U.S.C. § 1140. Section 510 claims outside the employee-employer relationship can thus only be asserted against defendants who have such authority. *See, e.g.*, *Abbott v. Pipefitters Local Union No. 522 Hosp.*, 94 F.3d 236 (6th Cir. 1996) (plan and trustees); *Tingey v. Pixley-Richards*, 953 F.2d 1124, 1132 n.4 (9th Cir. 1992) (insurer); *Warner v. Buck Creek Nursery*, 149 F. Supp.2d 246, 252, 258 (D. W.Va. 2001) (supervisor).

Therefore, a Section 510 claim must be dismissed when asserted against a defendant that "had nothing to do with the plan." *Feinberg v. RM Acquisition, LLC,* 629 F.3d 671, 675 (7th Cir. 2011) (dismissing Section 510 claim asserted

against defendant which had acquired all the assets of a company, but not the liabilities of the plaintiff's benefit plan); *see also Mattei v. Mattei*, 126 F.3d 794, 808 (6th Cir. 1997) ("to state a valid interference claim, the plaintiff's allegations should state, or at least support the inference, that the defendant possessed some control over either the benefit or its underlying funds").

Here, as in *Feinberg*, no plausible inference can be made that TCU in any way had the ability to directly affect the Individual Plaintiffs' employment or benefit status. The TCU is not alleged to have had any connection to the Plaintiffs' employer (RTS), their union (Local 705), the RTS Pension Plan, or any of the other plans that were a product of the RTS-Local 705 CBA. At most, the alleged role of the TCU is that it negotiated a collective-bargaining agreement with BNSF, which covered the BNSF employees who work at Corwith Yard and are within the craft or class that TCU represents. The Plaintiffs, however, expressly state that their claims are "totally independent of and in no way relate[] to any Collective Bargaining Agreements" and that their claims do not "relate to or depend upon any statements made in the context of any collective bargaining." App. at 15. And in any event, such a tangential connection has never been, and could not be, held sufficient to violate Section 510. TCU "had nothing to do with the plan" and therefore the Section 510 claim asserted against it was properly dismissed. *Feinberg*, 629 F.3d at 675.

Tellingly, the Plaintiffs do not even attempt to refute the district court's holding that "there are not sufficient allegations to indicate that TCU

participated in any way in the decision by RTS to terminate the employment of Individual Plaintiffs." Short App. at 11. Instead, the Plaintiffs now assert merely that a plaintiff need not show that a defendant "was actually successful in interfering with ERISA rights" to show a violation of Section 510. Appellants' Brief at 13. But even if that were correct as a matter of law, it is beside the point. The TCU cannot be held liable under Section 510 if it did not have the necessary relationship with the Plaintiffs.

Pursuant to the plain language of the statute and controlling precedent of this Court, the Plaintiffs have not alleged sufficient action by TCU to state a claim under Section 510 of ERISA.

> B. The TCU is not alleged to have had the specific intent of interfering with the Plaintiffs' benefits.

Independently, the Plaintiffs failed to state a claim against the TCU under Section 510, because they do not allege that the TCU ever acted with the requisite "specific intent" of interfering with their benefits. *Lucas,* 539 F.3d at 668. To the contrary, the Plaintiffs now confirm that any actions of the TCU are alleged to have been taken with the totally unrelated, and perfectly lawful, motive of increasing the amount of work covered by the BNSF-TCU collective-bargaining relationship.

An essential element to a Section 510 claim is proof that the defendant acted with the "specific intent of preventing or retaliating for the use of benefits." *Lindemann v. Mobil Oil Corp.,* 141 F.3d 290, 295 (7th Cir. 1998). "[P]laintiffs

must establish more than a loss of benefits." *Id.* The Plaintiffs do not dispute this, but instead argue that they need not prove intent at the pleading stage. *See* Appellants' Brief at 13. This is true, but the Plaintiffs nonetheless must allege enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S at 555. "[N]aked assertions devoid of further factual enhancement" are insufficient to avoid dismissal. *Iqbal*, 556 U.S. at 678. The Court thus must determine whether the Amended Complaint states enough facts on which it can plausibly infer that TCU took a prohibited action with the specific intent of interfering with the Plaintiffs' benefits.

Such an inference is foreclosed here. Both the Amended Complaint and the Plaintiffs' appellate brief confirm that the TCU never acted with such intent. While the Amended Complaint alleges generally that all the Defendants were driven by "benefits-avoidance motives," App. at 17, no specific allegation of such a motive is made as to the TCU. Nor can one logically be inferred since the TCU never had any obligations or liabilities vis-à-vis any relevant plan, and, therefore, had no benefit payment to avoid.

The Plaintiffs now definitively confirm that the TCU is *not* alleged to have acted with the intent of interfering with the Individual Plaintiffs' benefits. In their brief, the Plaintiffs assert that the TCU was instead motivated by the desire to gain "additional dues paying union members," and that the TCU "'specifically intended' to undercut the RTS-Local 705 agreement" in negotiations with BNSF. Appellants' Brief at 12, 17. Neither of these alleged

motivations have anything to do with interfering with the Individual Plaintiffs'
benefits, and thus cannot form the basis for a viable claim under Section 510 of
ERISA.

Because the Plaintiffs concede that the TCU's alleged motives were unrelated
to the Plaintiffs' benefits, the Section 510 claim as against the TCU fails as a
matter of law. *See Lindemann,* 141 F.3d at 295.

III.    **The Plaintiffs Failed to State a Conspiracy Claim.**

The Plaintiffs' second claim is for an alleged "civil conspiracy to violate ERISA rights." App. at 19. This claim was also properly dismissed.

A. As an initial matter, although the Plaintiffs rely on a state law case to establish what they purport to be the elements of their conspiracy claim, a state law claim would be preempted by ERISA. *See* 29 U.S.C. § 1144(a)(ERISA preempts "all State laws insofar as they … relate to any employee benefit plan"); *see also Ingersoll-Rand Co. v. McClendon*, 498 US 133, 140 (1990) (reversing on preemption grounds a state court finding of wrongful discharge for a termination motivated by the employer's desire to avoid pension payments); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1137 (7th Cir. 1992) (a plaintiff "cannot turn a Section 510 ERISA claim into a state claim simply by putting a different label on [its] claim").

B. Nor can a separate conspiracy claim be asserted under ERISA. The sole authority relied on by the Plaintiffs, *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka and Santa Fe Ry. Co.,* 80 F.3d 348 (9th Cir. 1996), does not support the Plaintiffs' conspiracy claim.[4] First, the Plaintiffs are mistaken that a

---

[4]    The Supreme Court's decision that reversed in part the Ninth Circuit's decision, *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka and Santa Fe Ry. Co.*, 520 U.S. 510 (1997), is largely irrelevant to the issues before this Court. The Supreme Court addressed whether Section 510 protections applied to welfare-benefit plans. *Id.* at 514. The Supreme Court did not address the elements of a Section 510 claim, or against whom such a claim can be asserted. *See Mattei*, 126 F.3d 806, n. 11 (noting limited scope of Supreme Court's decision in *Inter-Modal*).

17

"federal common law conspiracy theory" was recognized there. *See* Appellants'
Brief at 11 n. 6. That case involved statutory claims, not common-law claims.
Moreover, while the court in *Inter-Modal* stated in a footnote that a Section 510
claim was viable against a non-employer "who conspires with an employer to
interfere with ERISA-protected rights," the plaintiffs in that case do not appear
to have asserted an independent conspiracy claim. 80 F.3d at 350 n. 5. Instead,
the plaintiffs alleged the elements of a Section 510 claim against each defendant:
the defendants were alleged to have either discharged the plaintiffs or taken
another action with the intent to interfere with the plaintiffs' benefits. *Id.* at 350
n.5 (comparing alleged actions of the corporate defendant to an insurer coercing
an employer to fire an employee in order to avoid paying a benefit). By contrast,
the TCU is here alleged to have merely "accepted the benefit" of BNSF's decision
to insource the work. *See* Appellants' Brief at 18. And as set forth fully above,
such a passive and tangential connection is insufficient to state a viable claim.
Thus, while also alluding to an alleged "conspiracy" in violation of Section 510,
*Inter-Modal* does nothing to support the Plaintiffs' claims against the TCU. The
Plaintiffs have failed to provide any legal basis for their Section 510 conspiracy
theory.

And this Court should not recognize such a theory. ERISA is a
"comprehensive and reticulated statute" and therefore it is generally
inappropriate to infer rights or remedies not specifically provided by the Act. *See
generally Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145-6 (1985) (no

implied "right of action for extracontractual damages"); *see also Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical Coll. of Wis., Inc.* 657 F.3d 496, 504 (7th Cir. 2011) (collecting cases); *Reich v. Continental Cas. Co.* 33 F.3d 754, 758 (7th Cir. 1994). Section 510 imposes liability for directly engaging in six specified acts with unlawful intent, and thus does not support inferring a basis for liability absent engaging in one of those acts. *See* 29 U.S.C. § 1140.

C.  Moreover, even if there were some scenario in which a party could be liable for conspiracy to violate Section 510, such a claim would fail here because no alleged facts support the inference that TCU participated in any scheme to interfere with the Plaintiffs' benefits. *See Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985) ("A conspiracy may be demonstrated by circumstantial evidence, … however, mere allegations of a conspiracy are insufficient to withstand a motion to dismiss."); *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1208 (7th Cir. 1980) ("[E]ven a pro se litigant is required to allege something in the way of facts before his allegations of conspiracy may be deemed to state a claim.").

The only specific allegations involving the TCU relate to its collective-bargaining relationship with BNSF. App. at 12-3. Yet the Plaintiffs have adamantly disavowed any claims that relate to that relationship, stating that their claims are "totally independent of and in no way relate[] to any Collective Bargaining Agreements" and that their claims do not "relate to or depend upon any statements made in the context of any collective bargaining." App. at 15.

19

Any claim that the TCU participated in an unlawful conspiracy by bargaining with BNSF is therefore foreclosed. *See Walker v. Thompson*, 288 F.3d 1005, 1008 (7th Cir. 2002) (plaintiff appealing dismissal of complaint cannot make assertions that are not "consistent with the complaint"). Thus, although the Plaintiffs now assert that the TCU participated in an unlawful conspiracy because it had "no legal right" to negotiate with the BNSF, Appellants' Brief at 16, that allegation cannot form the basis for a viable claim. *Id.*[5]

D. Finally, the Plaintiffs cannot save their conspiracy theory from dismissal by asserting a Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy claim for the first time on appeal. "[A] plaintiff may not amend the complaint on appeal to state a new claim." *Am. Inter–Fid. Exch. v. Am. Re–Ins. Co.,* 17 F.3d 1018, 1022 (7th Cir. 1994); *see also Denney v. Eaton Corp.*, 165 F.3d 31 (7th Cir. 1998) (plaintiff could not assert a claim under the Family Medical Leave Act for the first time on appeal, where she had only asserted claims under the Americans with Disabilities Act below).The Plaintiffs have waived their ability to assert a RICO conspiracy claim.[6]

---

[5]    TCU plainly did have a legal right to negotiate regarding the terms of employment for BNSF clerical and related employees at Corwith Yard as the systemwide representative of all BNSF clerical and related employees throughout the United States. *See* 45 U.S.C. § 152, Ninth (carrier has legal obligation to "treat with" union).

[6]    In any event, the Plaintiffs have also not come close to alleging a viable RICO conspiracy claim. *See* 18 U.S.C.A. § 1962 (d) (civil RICO conspiracy provision); *see also Slaney v. The Int'l Amateur Athletic Fed'n* , 244 F.3d 580, 600 (7th Cir. 2001) (discussing elements of civil RICO conspiracy claim). "The

The conspiracy claim was properly dismissed. And while the Plaintiffs' assert that the district court "should have allowed re-pleading rather than dismiss the complaint with prejudice," Appellants' Brief at 19, no request or motion to amend was made to the court below, and the Plaintiffs have never proffered additional factual allegations that would support a viable claim against the TCU. There is thus no ground to reverse on this basis. *See Tricont'l Indus., Ltd. v. PwC LLP,* 475 F.3d 824, 838 n. 8 (7th Cir. 2007).

---

touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Slaney*, 244 F.3d at 600. "[A] civil conspiracy plaintiff" must allege "injury from an act that … is independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505-6 (2000). The Plaintiffs have failed to allege any such independently unlawful act.

CONCLUSION

For the foregoing reasons, the TCU respectfully requests that the decision of the district court dismissing this action be affirmed.

Dated: August15, 2012                    Respectfully submitted,

                                         s/*Jeffrey A. Bartos*
                                         Jeffrey A. Bartos
                                         N. Skelly Harper
                                         GUERRIERI, CLAYMAN,
                                         BARTOS & PARCELLI, P.C.
                                         1625 Massachusetts Ave. N.W., Suite 700
                                         Washington, DC  20036
                                         Telephone:  202.624.7400
                                         Facsimile:   202.624.7420
                                         jbartos@geclaw.com
                                         sharper@geclaw.com

                                         *Counsel for Defendant-Appellee TCU*

22

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: August 15, 2012          s/*Jeffrey A. Bartos*
                                Jeffrey A. Bartos
                                *Counsel for Defendant-Appellee TCU*

## CERTIFICATE OF COMPLIANCE

1.  The undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,778 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as calculated by the Microsoft Office Word 2007 word processing program used to prepare the brief.

2.  This brief complies with the typeface requirements of Circuit Rule 32(b) because it was prepared in 12.5 point Century font.

Dated: August 15, 2012          s/*Jeffrey A. Bartos*
                                Jeffrey A. Bartos
                                *Counsel for Defendant-Appellee TCU*