No. 11-3705

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

TEAMSTERS LOCAL UNION 705, *et al.,*

Plaintiffs-Appellants,

v.

BURLINGTON NORTHERN SANTA FE, LLC, *et al.,*

Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Illinois
Eastern Division; No. 1:11-cv-7378
The Honorable Samuel Der-Yeghiayan, Judge Presiding

BRIEF OF THE DEFENDANTS-APPELLEES
RAIL TERMINAL SERVICES, INC., RAIL MANAGEMENT
SERVICES, LLC AND CARRIX, INC.

Clifford R. Perry III
Laner, Muchin, Dombrow, Becker, Levin and Tominberg, Ltd.
515 North State Street - Suite 2800
Chicago, Illinois 60654
(312) 467-9800
(312) 467-9479 Fax

Attorneys for the Defendants-Appellees Rail Terminal
Services, Inc. Rail Management Services, LLC and Carrix, Inc.

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, the law firm of Laner, Muchin, Dombrow, Becker, Levin and Tominberg, Ltd., counsel for Defendants-Appellees Rail Terminal Services Inc. ("RTS"), Rail Management Services, LLC ("RMS") and Carrix, Inc. ("Carrix") (RTS, RMS and Carrix are referenced collectively as the "RTS Defendants"), hereby state that attorney Clifford R. Perry III has participated in the representation of Defendants-Appellees RTS, RMS and Carrix in the above-captioned matter.   Clifford R. Perry III is counsel of record for Defendants-Appellees RTS, RMS and Carrix.   RTS (100%) is owned by RMS.   RMS is owned by Rail Services of America (50%) and by Intermodal Management Services (50%).   Carrix is owned by FRS Capital Corp (100%).   No publicly held corporation owns 10% or more of the stock of any of the Defendants-Appellees.

Contact information:

Clifford R. Perry III
Laner, Muchin, Dombrow, Becker, Levin and Tominberg, Ltd.
515 North State Street - Suite 2800
Chicago, Illinois 60654
(312) 467-9800
(312) 467-9479 Fax
cperry@lanermuchin.com

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ............................................. ii

JURISDICTIONAL STATEMENT ....................................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .................................. 1

STATEMENT OF THE CASE.................................................................................. 2

STATEMENT OF FACTS ..................................................................................... 3

SUMMARY OF ARGUMENT .............................................................................. 5

    I.     THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF APPELLANTS' AMENDED COMPLAINT AS TO THE RTS DEFENDANTS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE .................................................................................... 5

    II.    THE DISTRICT COURT'S DECISION TO DISMISS APPELLANTS' AMENDED COMPLAINT AS TO RMS AND CARRIX SHOULD BE AFFIRMED BECAUSE APPELLANTS HAVE FAILED TO ALLEGE SUFFICIENT FACTS DEMONSTRATING THE PLAUSIBILITY OF RMS' AND CARRIX'S INVOLVEMENT IN RTS' CONDUCT ....................... 6

    III.   THIS COURT SHOULD NOT ORDER THE DISTRICT COURT TO GRANT APPELLANTS LEAVE TO FILE A SECOND AMENDED COMPLAINT ................................................................................... 6

ARGUMENT .................................................................................................... 7

    I.     STANDARD OF REVIEW .................................................................. 7

    II.    THE DISTRICT COURT PROPERLY DISMISSED APPELLANTS' ERISA §510 RETALIATION AND INTERFERENCE CLAIM AGAINST THE RTS DEFENDANTS UNDER RULES 8(A)(2) AND 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE BECAUSE APPELLANTS HAVE FAILED TO STATE A PLAUSIBLE CLAIM FOR RELIEF IN COUNT I OF THEIR AMENDED COMPLAINT .................................................................................. 7

        A.    Appellants Fail To Allege Any Facts In Count I Of Their Amended Complaint Which Plausibly Support A Claim That The RTS Defendants Interfered With The Local 705 Employees' ERISA Section 510 Rights ................................................................ 9

            1.    The Only Paragraphs In Count I Of Appellants' Amended Complaint Referencing The RTS Defendants Contain Legal Conclusions, And Do Not Set Forth Any Specific Facts Showing A Claim That Is Plausible On Its Face ............................ 9

2.    Appellants Concede In Their Amended Complaint, In Their Response Brief Below, And In Their Opening Brief On Appeal That The RTS Defendants Did Not Terminate The Local 705 Employees For The Purpose Of Retaliating Or Interfering With Their ERISA Section 510 Rights ...................... 12

B.    The *Inter-Modal Rail Employees Association* Case Upon Which Appellants Rely Is Materially Distinguishable From This Case As To The RTS Defendants ........................................................................ 14

C.    The District Court Did Not Hold That Appellants Are Required To Plead Actual Interference Or Injury To Appellants, And Appellants Have Nevertheless Failed To State A Plausible Claim For Relief .......... 16

1.    Appellants Have Failed To Fully Develop Their Argument On Appeal That The District Court Improperly Held That Appellants Are Required To Plead Actual Interference Or Injury And That Argument Is Therefore Waived ........................ 16

2.    Even If It Is Not Waived, Appellants' Argument That The District Court Improperly Required Appellants To Plead Actual Interference Or Injury To Appellants Does Not Support Appellants' Argument That The District Court's Decision Should Be Reversed ...................................................... 17

D.    The District Court Did Not Hold That Appellants Are Required To Plead That Interference With The Local 705 Employees' ERISA Rights Was The Sole Reason For Terminating The Local 705 Employees, And Appellants Have Nevertheless Failed To State A Plausible Claim For Relief .................................................................... 18

III.    THE DISTRICT COURT PROPERLY DISMISSED APPELLANTS' ERISA §510 CONSPIRACY CLAIM AGAINST THE RTS DEFENDANTS UNDER RULES 8(A)(2) AND 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE BECAUSE APPELLANTS HAVE FAILED TO STATE A PLAUSIBLE CLAIM FOR RELIEF ................ 20

A.    Count II Of Appellants' Amended Complaint Fails To Set Forth Any Specific Facts In Support Of Appellants' Legal Conclusion That The RTS Defendants Participated In A Conspiracy To Interfere With The Local 705 Employee's ERISA Rights ...................... 20

B.    Appellants' Argument That "There Is No Support In The Law To Dismiss A Complaint With Prejudice Because There Are Not Enough Facts" Is Wrong And Fails To Require Reversal Of The District Court's Decision ........................................................................ 22

IV.    APPELLANTS SHOULD NOT BE GRANTED LEAVE TO FILE A SECOND AMENDED COMPLAINT ............................................................ 23

A.    Appellants Failed To Request Leave To File A Second Amended Complaint With The District Court Below, And Appellants'

iv

Argument That The District Court Should Have Allowed Them To Re-Plead Is Therefore Waived .................................................................. 24

B.    Appellants Failed To Request That The District Court Below Grant Appellants Leave To Plead A RICO Claim, And Appellants' Argument That The District Court Should Have Allowed Them To Plead A RICO Claim Is Therefore Waived ............................................. 25

V.    APPELLANTS' AMENDED COMPLAINT WAS PROPERLY DISMISSED AS TO RMS AND CARRIX FOR THE ALTERNATIVE REASON THAT APPELLANTS HAVE FAILED TO ALLEGE SUFFICIENT FACTS DEMONSTRATING THE PLAUSIBILITY OF THE INVOLVEMENT OF RMS AND CARRIX IN RTS' CONDUCT AT ISSUE HERE .............................................................................................. 26

A.    Appellants Have Failed To Fully Develop Their Argument On Appeal That RMS And Carrix Should Be Held Liable For RTS' Conduct, And That Argument Is Therefore Waived ................................ 27

B.    Appellants Have Failed To Allege In Their Amended Complaint Sufficient Facts Demonstrating The Plausibility Of RMS' And Carrix's Involvement In RTS' Alleged Conduct At Issue Here .............. 27

# TABLE OF AUTHORITIES

**Cases**

*APS Sports Collectibles, Inc. v. Sports Time, Inc.,* 299 F.3d 624 (7th Cir. 2002) ........................ 28

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ........................................ 1, 7, 8, 9, 10, 12, 20, 21, 22, 23

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) .............................................. 1, 3, 5, 9, 20

*Bonte v. U.S. Bank, N.A.*, 624 F.3d 461 (7th Cir. 2010) .................................................................. 7

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) .............................................................................. 10

*Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000)................................................................................................................ 28

*Cole v. Milwaukee Area Technical College District*, 634 F.3d 901 (7th Cir. 2011) ..................... 7

*Inter-Modal Rail Employees Association, et al. v. Atchison, Topeka & Santa Fe Railway Company, et al,* 80 F.3d 348 (9th Cir. 1996) ........................................................... 8, 14, 15, 16

*Inter-Modal Rail Employees Association, et al. v. Atchison, Topeka & Santa Fe Railway Company, et al.*, 520 U.S. 510 (1997) ...................................................................................... 8

*Jakimas. v. Hoffman-LaRoche, Inc.*, 485 F.3d 770 (3rd Cir. 2007)............................................... 17

*James Cape & Sons Company v. PCC Construction Company et al.*, 453 F.3d 396, (7th Cir. 2006).......................................................................................................................... 24

*Jones v. Countrywide Home Loans, Inc.*, 2010 WL 551418 (N.D. Ill., 2/11/10) ........................ 28

*Lindemann v. Mobil Oil Corp.* 141 F.3d 290 (7th Cir. 1998)....................................................... 10

*Magnus v. St. Mark United Methodist Church*, 2010 WL 4177614 (N.D. Ill., 10/19/10)............ 12

*McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492 (D.NJ, 1985)................................. 25, 26

*Meredith v. Navistar International Transportation Corporation*, 935 F.2d 124 (7th Cir. 1991) ................................................................................................................................... 10

*Roush v. Weastec, Inc.*, 96 F.3d 840 (6th Cir. 1996) ................................................................... 17

*Sharp Electronics Corp. v. Metropolitan Life Insurance Co.*, 578 F.3d 505 (7th Cir. 2009)........ 25

*Swanson v. Citibank, N.A.,* 614 F.3d 400 (7th Cir. 2010)............................................................. 7

*Trentadue v. Redmon et al.,* 619 F.3d 648 (7th Cir. 2010) .......................................................... 16

**Statutes**

29 U.S.C. §1381(a) ........................................................................................................................ 13

Circuit Rule 26.1 ............................................................................................................................. ii

ERISA §510 ................................................................... 1, 2, 5, 7, 8, 9, 10, 12, 17, 18, 19, 20, 25

ERISA §511 ..................................................................................................................................... 3

Rule 12(b)(6) of the Federal Rules of Civil Procedure................................................... 1, 2, 3, 5, 7

Rule 8(a)(2) of the Federal Rules of Civil Procedure .................................................... 1, 3, 5, 7, 9

Rule 9(b) of the Federal Rules of Civil Procedure ...................................................... 26

## JURISDICTIONAL STATEMENT

RTS, RMS and Carrix state that Plaintiffs-Appellants' ("Appellants") jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.     Whether the District Court properly dismissed Appellants' ERISA Section 510 retaliation and interference claim against RTS, RMS and Carrix under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Appellants have failed to state a plausible claim for relief in Count I of their Amended Complaint pursuant to the U.S. Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

II.     Whether the District Court properly dismissed Appellants' ERISA Section 510 conspiracy claim against RTS, RMS and Carrix under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Appellants have failed to state a plausible claim for relief in Count II of their Amended Complaint pursuant to the U.S. Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

III.     Appellants allege that RMS and Carrix are the corporate parents of RTS.  The third issue presented for review is whether the District Court properly dismissed Appellants' ERISA Section 510 interference and conspiracy claims against RMS and Carrix under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Appellants have failed to allege sufficient facts in their Amended Complaint demonstrating the plausibility of RMS' and Carrix's involvement in RTS' conduct at issue here.

IV.     Whether this Court should order the District Court to grant Appellants leave to file a second amended complaint where Appellants did not make that request with the District Court below.

## STATEMENT OF THE CASE

Appellants are comprised of Teamsters Local 705 ("Local 705") and six individual members of Teamsters Local 705 as putative class representatives of a putative class of employees represented by Local 705 (the "Local 705 Employees") at the Corwith Intermodal Rail Yard ("Corwith") in Chicago, Illinois.  On November 16, 2010, Appellants filed a two-count ERISA class-action Complaint against each of the nine Defendants-Appellees, except for the Transportation Communications International Union ("TCIU"), which was added as a Defendant in an Amended Complaint filed by Appellants on January 18, 2011 (RA24)[1]**.**  In their Amended Complaint, Appellants claim that RTS, RMS, Carrix and the other Defendants-Appellees in this case: (1) retaliated against the Local 705 Employees and interfered with their rights in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1140 and 1141 (Count I) (29 U.S.C. §1140 is referenced herein as "ERISA §510," and 29 U.S.C. §1141 is referenced herein as "ERISA §511"); and (2) engaged in a conspiracy to violate the Local 705 Employees' rights guaranteed under ERISA §§510 and 511 (Count II) (A2-20).

On April 20, 2011, each of the Defendants-Appellees filed a motion to dismiss Appellants' Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, except that TCIU filed its motion to dismiss on May 25, 2011 (RA26-27).  The RTS Defendants argued that Appellants' Amended Complaint must be dismissed in its entirety under Rules

---

[1]     References to Appellants' Required Short Appendix appear herein as "RA __" and references to Appellants' Appendix appear herein as "A __."  The RTS Defendants have not filed a separate Appendix.

2

8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure because it fails to state a plausible claim for relief as required by the U.S. Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009).  Further, the RTS Defendants argued that Plaintiffs' ERISA §511 claims must be dismissed for the additional reason that only the United States Attorney General, and not a private plaintiff, may bring a cause of action under ERISA §511.  Finally, in the alternative, the RTS Defendants argued that Appellants' Amended Complaint must be dismissed as to RMS and Carrix for the additional reason that Appellants have failed to allege that RMS and Carrix were involved in the conduct at issue in this case, and Appellants' Amended Complaint therefore fails to state a claim upon which relief can be granted as to RMS and Carrix.  On November 3, 2011, the District Court granted the RTS Defendants' motion to dismiss for the reasons the RTS Defendants articulated in their motion, and entered judgment that same day (RA6-19, 30).[2]  Appellants timely filed a notice of appeal on December 5, 2011 (RA30).

## STATEMENT OF FACTS

Defendant Burlington Northern Santa Fe Railroad ("BNSF") owns and operates the Corwith Intermodal Rail Yard in Chicago, Illinois, and, in 2000, BNSF hired RTS to assist it in operating Corwith (A8-9 at ¶¶17-18).  Prior to 2000, BNSF relied on its subsidiary, Santa Fe Terminal Services ("Santa Fe"), to perform this function (*Id.*).  Local 705 represented employees who worked for both Santa Fe and RTS (after it assumed Santa Fe's role) (A8-9 at ¶¶14, 19).  At

---

[2]    Appellants did not respond to the RTS Defendants' argument that Appellants have no standing to sue under ERISA §511, and Appellants did not challenge that argument in their response to the RTS Defendants' motion to dismiss and do not challenge the District Court's dismissal of that claim on appeal.  For this reason, Appellants have conceded that dismissal of their ERISA §511 claim was proper, and Appellants' abandoned ERISA §511 claim will not be further discussed in this Brief.  *Local 15, International Brotherhood of Electrical Workers*, *AFL-CIO v. Exelon Corporation,* 495 F.3d 779, 783 (7th Cir. 2007) ("A party waives any argument that it does not raise before the district court… .")

the time Appellants' Amended Complaint was filed, RTS employed approximately 166 Local 705 Employees who worked at the Corwith yard (A4 at ¶4). At some point during the previous 60 years, an ERISA pension plan was established for the benefit of the Local 705 Employees working at the Corwith yard (A4, 9 at ¶¶4, 20).

On October 18, 2010, RTS informed Appellants that BNSF was terminating its contract with RTS and that BNSF would assume the duties previously performed by RTS (A6, 11 at ¶¶8, 26-27). Because it no longer would be performing any work for BNSF at Corwith, RTS was required to terminate its entire Corwith workforce, including the Local 705 Employees (A11 at ¶¶26-27). The Local 705 Employees, however, like all other RTS employees at Corwith, were allowed by BNSF to apply for comparable positions at Corwith as BNSF employees (A11 at ¶27). Following the termination of RTS' contract with BNSF, Local 705 would be replaced by TCIU as the employees' new bargaining representative (A11 at ¶¶26-29). As a result of BNSF's decision to terminate its contract with RTS and the corresponding termination of the RTS workforce at Corwith, the former Local 705 Employees would no longer be entitled to accrue additional Teamster pension benefits if they continued to work at Corwith (A11 at ¶¶27-28). The former Local 705 Employees who were re-hired by BNSF would only be entitled to start accruing pension benefits provided under the collective bargaining agreement executed by and between BNSF and TCIU (A11, 13 at ¶¶27, 33).  Although Appellants admit in their Amended Complaint that RTS terminated the Local 705 Employees at Corwith because BNSF terminated its contract with RTS (A9, 11 at ¶¶18, 26-27), Appellants also allege, in a conclusory fashion, that RTS' real motivation in terminating the Local 705 Employees and shutting down its entire Corwith operation was to prevent the Local 705 Employees from attaining their health, welfare and pension rights under ERISA (A17-19 at ¶¶43, 46).

## SUMMARY OF ARGUMENT

I.    **THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF APPELLANTS' AMENDED COMPLAINT AS TO THE RTS DEFENDANTS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

The District Court below properly dismissed Appellants' ERISA Section 510 retaliation and interference and conspiracy claims against RTS, RMS and Carrix on the grounds that Appellants have failed to state a plausible claim for relief under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure pursuant to the U.S. Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In their Amended Complaint, Appellants plead the legal conclusion that the RTS Defendants interfered with, and conspired to interfere with, their Section 510 ERISA rights when RTS terminated the Local 705 Employees as a result of losing its contract to assist BNSF in the operation of the Corwith Intermodal Rail Yard, which is owned by BNSF.  Appellants have failed, however, to plead any facts in support of this legal conclusion and, in fact, they concede that RTS' decision to terminate the Local 705 Employees was an involuntary and mandatory response to BNSF's decision to terminate RTS' contract at Corwith, a decision over which Appellants concede RTS had absolutely no control.  Appellants' failure to plead any facts in support of their legal conclusion, and their admission that the terminations of the Local 705 Employees were not motivated by a desire to avoid the payment of ERISA benefits (but was instead a mandatory response to BNSF's decision to terminate RTS' contract at Corwith), requires that this Court affirm the District Court's decision.

II.   **THE DISTRICT COURT'S DECISION TO DISMISS APPELLANTS' AMENDED COMPLAINT AS TO RMS AND CARRIX SHOULD BE AFFIRMED BECAUSE APPELLANTS HAVE FAILED TO ALLEGE SUFFICIENT FACTS DEMONSTRATING THE PLAUSIBILITY OF RMS' AND CARRIX'S INVOLVEMENT IN RTS' CONDUCT**

The District Court's decision to dismiss Appellants' Amended Complaint as to RMS and Carrix should be affirmed because Appellants have failed to allege sufficient facts demonstrating the plausibility of RMS' and Carrix's involvement in RTS' conduct.  In order to maintain a claim against RMS and Carrix, which Appellants allege are RTS' parent corporations, Appellants must allege sufficient facts demonstrating the plausibility of RMS' and Carrix's involvement in RTS' alleged conduct.  Appellants, however, merely state in their Amended Complaint that "Carrix is the parent to both RTS and RMS" and that "RTS is the subsidiary of Defendant Rail Management Services."  These allegations standing alone are insufficient to state a claim against RMS and Carrix and, even if Appellants' Amended Complaint is not otherwise dismissed as to the RTS Defendants, it should be dismissed as to RMS and Carrix for this reason.

III.  **THIS COURT SHOULD NOT ORDER THE DISTRICT COURT TO GRANT APPELLANTS LEAVE TO FILE A SECOND AMENDED COMPLAINT**

This Court should not order the District Court to grant Appellants leave to file a second amended complaint.  Appellants failed to file with the District Court below a motion requesting leave to file a second amended complaint, failed to request leave to file a second amended complaint in response to the motions to dismiss filed by the RTS Defendants and the other Defendants-Appellees, failed to otherwise request that the District Court grant leave to file a second amended complaint, and have failed to fully develop their argument regarding their request on appeal.  Because Appellants raise this issue for the first time on appeal, and because the argument is not fully developed, it is waived.  Thus, this Court should not order the District Court to grant Appellants leave to file a second amended complaint.

**ARGUMENT**

**I.    STANDARD OF REVIEW**

This Court reviews *de novo* a district court's Rule 12(b)(6) dismissal of a complaint and construes a complaint "in the light most favorable to Plaintiff, accepting all well-pleaded facts and drawing all possible inferences in his favor." *Cole v. Milwaukee Area Technical College District*, 634 F.3d 901, 903 (7th Cir. 2011) (citation omitted). However, the complaint must "contain sufficient factual matter, accepted as true to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). As this Court has held, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

Although the court is required to accept all well-pleaded facts as true, the court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010) *Id.* (*citing Iqbal,* 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions")). Moreover, in complaints involving complex litigation, such as this one, more factual detail is required "both to give the opposing party notice of what the case is about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson,* 614, F.3d at 405 (7th Cir. 2010).

**II.    THE DISTRICT COURT PROPERLY DISMISSED APPELLANTS' ERISA §510 RETALIATION AND INTERFERENCE CLAIM AGAINST THE RTS DEFENDANTS UNDER RULES 8(A)(2) AND 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE BECAUSE APPELLANTS HAVE FAILED TO STATE A PLAUSIBLE CLAIM FOR RELIEF IN COUNT I OF THEIR AMENDED COMPLAINT**

In their Opening Brief, Appellants argue that the District Court's dismissal of their Amended Complaint was improper because they adequately pled an ERISA §510 retaliation and

interference claim (Appellants' Brief at pp. 9-14).   In support of this proposition, Appellants make four arguments.   Appellants first argue that "the general elements of a Section 510 interference claim are (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee is or may become entitled to," and that Appellants pled these elements somewhere in their Amended Complaint (without ever identifying where) (Appellants' Brief at pp. 10, 14).   Appellants next argue that the District Court's dismissal was improper because the U.S. Court of Appeals for the Ninth Circuit reversed the dismissal of a purportedly similar claim in *Inter-Modal Rail Employees Association, et al. v. Atchison, Topeka & Santa Fe Railway Company*, *et al,* 80 F.3d 348 (9th Cir. 1996), vacated and remanded on other grounds, *Inter-Modal Rail Employees Association, et al. v. Atchison, Topeka & Santa Fe Railway Company*, *et al.*, 520 U.S. 510 (1997), and that this Court should follow the Ninth Circuit's decision in *Inter-Modal* (Appellants' Brief at pp. 10-12, 19).   Appellants then argue that the District Court improperly held that they are required to plead that a defendant's interference was successful in order to survive the RTS Defendants' motion to dismiss (Appellants' Brief at p. 13).   Finally, Appellants argue that the District Court improperly held that there is no "requirement to 'prove' at the pleading stage that Section 510 interference was solely due to a defendant's desire to shed ERISA pension and welfare benefit liabilities" in order to survive the RTS Defendants' motion to dismiss (Appellants' Brief at p. 13 (heading III)).

As discussed more fully below, Appellants' arguments must be rejected because: (1) Appellants' summary of the general elements of a Section 510 interference claim in their Opening Brief and in their Amended Complaint is nothing more than a "formulaic recitation of a cause of action" that is insufficient to withstand a motion to dismiss under *Iqbal*.  *Iqbal*, 129 S.Ct. at 1949 (2009); *Bonte*, 624 F.3d at 463 (7th Cir. 2010); (2) the Ninth Circuit decision upon

which Appellants rely is materially distinguishable as to the RTS Defendants here; (3) contrary to Appellants' argument in their Opening Brief, the District Court did not hold that Appellants are required to plead actual interference and, in any event, Appellants have failed to allege facts sufficient to state a plausible claim for relief; and (4) contrary to Appellants' argument in their Opening Brief, the District Court did not hold that Appellants are required to plead that interference with their ERISA rights was the sole reason for terminating the Local 705 Employees and, in any event, Appellants have failed to state a plausible claim for relief. Thus, for all these reasons, the District Court's decision to dismiss Count I of Appellants' Amended Complaint as to the RTS Defendants should be affirmed.

**A.    Appellants Fail To Allege Any Facts In Count I Of Their Amended Complaint Which Plausibly Support A Claim That The RTS Defendants Interfered With The Local 705 Employees' ERISA Section 510 Rights**

**1.    The Only Paragraphs In Count I Of Appellants' Amended Complaint Referencing The RTS Defendants Contain Legal Conclusions, And Do Not Set Forth Any Specific Facts Showing A Claim That Is Plausible On Its Face**

Contrary to Appellants' argument in their Opening Brief, the District Court below properly dismissed Count I of Appellants' Amended Complaint because they have failed to plead sufficient facts to state a plausible claim for relief under Rule 8(a)(2) of the Federal Rules of Civil Procedure and under the U.S. Supreme Court's decisions in *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007). In Count I of their Amended Complaint, Appellants allege that the RTS Defendants violated ERISA Section 510 (A17-19 at ¶¶43-45), which makes it a civil violation "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or a beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." This Court has held that, "[t]o prove a violation of Section 510, plaintiffs must establish more than a loss of benefits; they must demonstrate that their employers

terminated them with the specific intent of preventing or retaliating for the use of benefits." *Lindemann v. Mobil Oil Corp.* 141 F.3d 290, 295 (7th Cir. 1998). In order for Appellants' Amended Complaint to survive a motion to dismiss, then, Appellants must allege specific facts to support Appellants' legal conclusion that the RTS Defendants "terminated them with the specific intent of preventing or retaliating for the use of benefits." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those claims, that they must do more"). And, in order to show that the RTS Defendants "terminated Appellants with the specific intent of preventing or retaliating for the use of benefits," Appellants must allege facts showing that the interference or retaliation was a "motivating" or "determinative" factor in the decision-making process. *Meredith v. Navistar International Transportation Corporation*, 935 F.2d 124, 127 (7th Cir. 1991).

Significantly, however, Count I of Appellants' Amended Complaint is devoid of any factual allegations whatsoever supporting their legal conclusion that the RTS Defendants were motivated in any way to prevent or retaliate for the use of benefits, and therefore Count I of Appellants' Amended Complaint is not plausible on its face. Instead of alleging specific facts showing that their Section 510 claim is plausible on its face, Appellants merely parrot the language contained in Section 510, and conclude in Paragraph 43 of Count I of their Amended Complaint that "[t]he termination of putative Plaintiffs' employment, the misleading actions and misrepresentations leading up to that termination, and the contrived pre-employment process by Defendants constituted discharge, suspension, exclusion and discrimination within the terms of ERISA §510 . . . ." (A16-17 at ¶43). As this Court held in *Brooks, supra,* however, plaintiffs who merely "parrot [ ] the statutory language of the claims that they are pleading . . . have not

provided the 'showing' required by Rule 8." *Brooks,* 578 F.3d at 581 (7th Cir. 2009). Moreover, although Appellants state in Paragraph 43 of their Amended Complaint that someone engaged in "misleading actions," "misrepresentations" and a "contrived pre-employment process," Appellants fail to state in their Amended Complaint whether it was the RTS Defendants or one or more of the other Defendants-Appellees who engaged in any of the alleged "misleading actions," "misrepresentations" or "contrived pre-employment process."[3] Further, Appellants fail to allege any facts anywhere in their Amended Complaint identifying what the purported "misleading actions," "misrepresentations" or "contrived pre-employment process" were. Thus, Paragraph 43 of Appellants' Amended Complaint is merely a legal conclusion couched as a factual allegation, and is insufficient to withstand the RTS Defendants' motion to dismiss.

In addition to the legal conclusion set forth in Paragraph 43 of their Amended Complaint, Appellants set forth additional legal conclusions in Paragraphs 31 and 41-42 as to the RTS Defendants (A12, 16-17). In those Paragraphs, Appellants state that the "Defendants" terminated the Local 705 Employees, and it therefore logically follows that those terminations must have somehow been effectuated for the purpose of interfering with the Local 705

---

[3]     For example, the alleged "contrived pre-employment process" cannot refer to RTS because RTS was the incumbent employer, and BNSF was the prospective employer; only the prospective employer could have engaged in a "pre-employment" process.

Employees' ERISA rights (*Id.*).[4]   Significantly, however, none of the referenced paragraphs

contain any factual support for Appellants' legal conclusion that RTS terminated the Local 705

Employees with the intent of interfering with their rights under ERISA and, like the allegations

contained in Paragraph 43, such allegations are therefore nothing more than "unadorned, the-

defendant-unlawfully-harmed-me accusation[s]," which are prohibited under *Iqbal*.  *Iqbal*, 129

S.Ct. at 1949 (2009).   Thus, because Appellants have failed to plead "factual content that allows

the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct

alleged," *id.*, this Court should affirm the District Court's dismissal of Count I of Appellants'

Amended Complaint.   *See also, Magnus v. St. Mark United Methodist Church*, 2010 WL

4177614, *6 (N.D. Ill., 10/19/10) (not reported in F.Supp.) ("[r]ather than allege facts sufficient

to state a plausible [ERISA §510] claim, Plaintiff has merely made the type of conclusory

statements deemed insufficient to survive a motion to dismiss").

> **2.     Appellants Concede In Their Amended Complaint, In Their Response Brief Below, And In Their Opening Brief On Appeal That The RTS Defendants Did Not Terminate The Local 705 Employees For The Purpose Of Retaliating Or Interfering With Their ERISA Section 510 Rights**

Not only do Appellants fail to allege any facts supporting their legal conclusion that the

RTS Defendants terminated the Local 705 Employees for the purpose of retaliating or interfering

---

[4]      The only other Paragraphs where the RTS Defendants are even mentioned by name are Paragraphs 15, 17, 26-27, 37 and 40, and none of these Paragraphs contain any factual allegations relating to, let alone supporting, the conclusory allegations contained in Paragraph 43 (A8-9, 10, 15-16 at ¶¶15, 17, 26-27, 37, 40).  Paragraph 15 references the corporate relationship between the RTS Defendants; Paragraph 17 alleges that the RTS Defendants were hired by BNSF to assist in the operation of Corwith; Paragraphs 26 and 27 allege that RTS was told that BNSF had fired RTS; Paragraph 37 alleges that this cause of action is unrelated to the collective bargaining agreements executed between Defendants, including the RTS Defendants, and any other labor organization; and Paragraph 40 alleges that the RTS Defendants were aware of "putative Plaintiffs' employment relationship . . . with the Railroad" (even though Plaintiffs allege that, after 2000, the Local 705 Employees were RTS employees, and *not* BNSF employees (A11 at ¶¶26-27)).

with their ERISA rights, but Appellants admit in their Amended Complaint, in their Response Brief below and in their Opening Brief on appeal that the only reason RTS terminated the Local 705 Employees was because RTS was involuntarily forced to do so when BNSF unilaterally terminated its contract with RTS at Corwith.  In their Amended Complaint, Appellants state that RTS had entered into a contract with BNSF to assist BNSF in the operation of Corwith, and that BNSF terminated that contract in October 2010 because BNSF decided to bring the work in-house (A8-9, 11 at ¶¶17-18, 26-27.)  Appellants admit in their Amended Complaint that, as a result of BNSF's decision to terminate RTS, RTS was likewise forced to terminate all of its Corwith employees, including the Local 705 Employees (*Id.*).  In their Response Brief below and in their Opening Brief on appeal, Appellants state that BNSF "could then make the decision whether to retain RTS and the Teamsters," and that BNSF decided to "cancel [ ] RTS' contract" (A30; Appellant's Brief at p.5).  Both of these statements reflect Appellants' recognition that if BNSF retained RTS, then the Teamsters would keep their jobs with RTS; but if BNSF decided to terminate its contract with RTS, then the Teamsters would lose their jobs with RTS.  Appellants therefore concede in their Amended Complaint, in their Response Brief below and in their Opening Brief on appeal that RTS' purpose in terminating the Local 705 Employees was not to interfere with the Local 705 Employees' ERISA rights, but instead was an involuntary and mandatory response to BNSF's decision to terminate RTS' contract at Corwith, a decision over which RTS had absolutely no control.[5]  Thus, the District Court's decision to dismiss Appellants' Amended Complaint should be affirmed.

---

[5]     Further, Plaintiffs fail to allege any facts as to the possible motivation for RTS to shut down entirely a profitable operation, which required RTS to pay millions of dollars in withdrawal liability to the multi-employer pension fund under ERISA.  29 U.S.C. §1381(a) ("if an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability").  It is nonsensical, let alone implausible, to believe that RTS would terminate the Local

**B.     The *Inter-Modal Rail Employees Association* Case Upon Which Appellants Rely Is Materially Distinguishable From This Case As To The RTS Defendants**

Appellants' reliance on *Inter-Modal Rail Employees Association v. Atchison, Topeka & Santa Fe Railway Company*, 80 F.3d 348 (9th Cir. 1996) is entirely misplaced as to the RTS Defendants, and that case fails to support Appellants' position that the District Court's decision should be reversed here.[6]  In *Inter-Modal*, Defendant Atchison, Topeka and Santa Fe Railway Company ("ATSF") engaged its wholly-owned subsidiary, Santa Fe Terminal Services ("SFTS"), to perform cargo handling work for ATSF.  *Inter-Modal*, 80 F.3d at 349-350.  ATSF subsequently transferred the work from SFTS to an independent corporation, In-Terminal Services Division of Mi-Jack Products, Inc. ("In-Terminal") and, as a result, the SFTS employees lost their jobs.  *Id.*  The terminated SFTS employees and the Inter-Modal Rail Employees Association (the "Association"), who represented the employees, filed a complaint in the U.S. District Court for the Central District of California alleging that ATSF conspired with In-Terminal to transfer the work from SFTS to In-Terminal for the purpose of interfering with the employees' attainment of their rights to pension, health and welfare benefits.  *Id.*  According to the plaintiffs, "defendants 'entered into a wrongful conspiracy' to transfer the work from Santa Fe Terminal Services to In-Terminal Services 'for the express purpose of avoiding' payment of contributions to the Railroad Retirement Fund and minimizing payments for Teamster benefits."  *Id. at 350.*  The district court dismissed the plaintiffs' complaint for failure to state a claim.  *Id.*  The U.S. Court of Appeals for the Ninth Circuit summarily reversed the

---

705 Employees in order to avoid its ERISA obligations where the result would be a total loss of the Corwith business and a corresponding obligation to pay millions of dollars in withdrawal liability.

[6]     Appellants rely on *Inter-Modal* in support of their arguments that the District Court improperly dismissed both Count I and Count II of their Amended Complaint (Appellant's Brief at pp. 10-13, 19-20).

district court's dismissal of the plaintiffs' complaint as to the pension benefits (but affirmed as to the health and welfare benefits). *Id.* at 353.

Appellants now argue in their Opening Brief that this Court should rely on the Ninth Circuit's decision in *Inter-Modal* and reverse the District Court's dismissal of their Amended Complaint. Significantly, however, *Inter-Modal* is distinguishable from our case as to the RTS Defendants, and, in fact, *Inter-Modal* presents facts that are the opposite of the facts in our case. In *Inter-Modal*, the principal — ATSF, through its wholly-owned subsidiary SFTS — performed the work in question and was therefore the incumbent employer; it allegedly sought to cut the benefits costs it was required to pay under the collective bargaining agreement by terminating the employees performing the work and then transferring the work to an agent — In-Terminal — who allegedly stood to benefit from ATSF's actions because In-Terminal would perform the work previously performed by the SFTS employees. ATSF would therefore benefit by curtailing its ERISA-protected benefits costs and In-Terminal would benefit by profiting from the new work it would be performing for ATSF.

In our case, by contrast, RTS — BNSF's agent — was the incumbent employer originally performing the work in question, and when BNSF, the principal, cancelled its contract with RTS, the agent, and brought the work in-house, RTS did not benefit like In-Terminal did. Rather, RTS suffered significant economic loss because it lost a profitable operation at Corwith and was required to pay millions of dollars in withdrawal liability. 29 U.S.C. §1381(a). Unlike Appellants in our case, the plaintiffs in *Inter-Modal* were able to allege that the agent was a part of a conspiracy to deprive the plaintiffs in *Inter-Modal* of their benefits because they were able to allege that the agent stood to gain from the principal's actions. In our case, however, Appellants have not and cannot allege that the RTS Defendants stood to gain from BNSF's decision to

15

terminate RTS' contract.  To the contrary, RTS is no longer assisting in BNSF's operation at Corwith and has been required to pay millions of dollars in withdrawal liability to the health, welfare and pension funds under ERISA (A11 at ¶26); 29 U.S.C. §1381(a).  Indeed, as discussed above, the RTS Defendants in this case find themselves in the exact same place as Appellants — terminated at Corwith.  The Ninth Circuit's decision in *Inter-Modal* is therefore distinguishable as to the RTS Defendants here, and the Ninth Circuit's reversal of the district court's decision in *Inter-Modal* has no impact whatsoever on our case.  Thus, for the reasons discussed in Section II of the RTS Defendants' Argument, *infra,* the District Court's decision should be affirmed.

>    **C.     The District Court Did Not Hold That Appellants Are Required To Plead Actual Interference Or Injury To Appellants, And Appellants Have Nevertheless Failed To State A Plausible Claim For Relief**
>
>    **1.     Appellants Have Failed To Fully Develop Their Argument On Appeal That The District Court Improperly Held That Appellants Are Required To Plead Actual Interference Or Injury And That Argument Is Therefore Waived**

In their Opening Brief, Appellants argue that the District Court improperly held that they are required to plead actual interference with their ERISA rights in their Amended Complaint (Appellants' Brief at p. 13).  Significantly, however, Appellants have failed to develop this argument in their Opening Brief on appeal, and it is therefore waived.  *Trentadue v. Redmon et al.,* 619 F.3d 648, 654 (7th Cir. 2010) ("underdeveloped arguments are considered waived").  Appellants fail to cite to a page or section of the District Court's Memorandum Opinion in support of their proposition that the District Court held that they are required to plead actual interference, and it is therefore impossible to ascertain the basis for Appellants' argument.  Further, it is unclear from Appellants' argument whether it is even directed at the RTS Defendants.  The RTS Defendants are not referenced by name at all in this argument, and Appellants' entire argument consists of the following:  "There is no requirement to plead there

was an injury to plaintiff. In other words, to state a claim under Section 510, plaintiff does not even have to plead that was [sic] actual interference with an ERISA benefit" (citations omitted) (Appellants' Brief at p. 13). Not only does this two-sentence argument fail to reference the RTS Defendants, it fails to support or even relate to Appellants' position that the District Court's decision should be reversed. Appellants have therefore failed to develop this argument on appeal because they have failed to identify which portion of the District Court's decision they are challenging, have failed to state whether their argument is directed at the RTS Defendants, and have failed to demonstrate (or even attempt to demonstrate) how this argument supports their position that the District Court's decision should be reversed. Thus, Appellants' argument is waived, and the District Court's decision should be affirmed.

> **2.      Even If It Is Not Waived, Appellants' Argument That The District Court Improperly Required Appellants To Plead Actual Interference Or Injury To Appellants Does Not Support Appellants' Argument That The District Court's Decision Should Be Reversed**

Even if Appellants have not waived the argument that the District Court improperly required Appellants to plead actual interference or injury to Appellants, the District Court's dismissal should nevertheless be affirmed. First, contrary to Appellants' argument in their Opening Brief, the District Court's holding does not reference any requirement "to plead that there was an injury to plaintiff," and, as discussed above, Appellants fail to cite to any page or section in the District Court's Memorandum Opinion to the contrary. Second, Appellants' argument fails to address the fundamental deficiency with their Amended Complaint — that it does not state a plausible claim for relief. In support of their position, Appellants cite to two cases outside of the Seventh Circuit that they claim stand for the proposition that pleading actual injury is unnecessary in a Section 510 ERISA claim: *Jakimas. v. Hoffman-LaRoche, Inc.*, 485 F.3d 770, 785, n. 21 (3rd Cir. 2007); *Roush v. Weastec, Inc.*, 96 F.3d 840, 845 (6th Cir. 1996).

Significantly, however, these cases also stand for the proposition that, although an allegation of actual injury is unnecessary, plaintiffs are still required to plead that a defendant specifically intended to interfere with a plaintiff's ERISA rights. *Jakimas*, 485 F.3d at 785, n.21 (3rd Cir. 2007) ("Proof of specific intent to interfere with the attainment of pension eligibility, then … will ordinarily constitute a violation of §510 of ERISA) (citation omitted); *Roush*, 96 F.3d at 845 (6th Cir. 1996)  ("The plaintiff must demonstrate that the employer engaged in the prohibited conduct with the *specific intent* of violating ERISA") (emphasis in original).  And, as the District Court here held, Appellants have failed to so plead in their Amended Complaint ("Defendants cannot be expected to speculate as to the basis of Plaintiffs' claims and Plaintiffs have failed to provide sufficient facts to plausibly suggest a violation of Section 510 by RTS" (RA14)).  Thus, Appellants' argument that the District Court improperly required Appellants to plead actual interference does not support Appellants' argument that the District Court's decision to dismiss Count I of Appellants' Amended Complaint should be reversed, and the District Court's decision should be affirmed.

> **D.    The District Court Did Not Hold That Appellants Are Required To Plead That Interference With The Local 705 Employees' ERISA Rights Was The Sole Reason For Terminating The Local 705 Employees, And Appellants Have Nevertheless Failed To State A Plausible Claim For Relief**

Appellants argue in their Opening Brief that "there is no need to plead that interference with ERISA rights was the reason for discharge," and that "Section 510 of ERISA requires no more than the allegation that the desire to defeat pension liability is 'a determinative factor' in the challenged conduct" (Appellants' Brief at pp. 13-14)  Appellants' argument fails to require reversal of the District Court's decision, however, for three reasons.  First, Appellants again fail to cite to any page or section of the District Court's Memorandum Opinion supporting their position that the District Court held that "there is no need to plead that interference with ERISA

18

rights was the reason for discharge" or that "Section 510 of ERISA requires no more than the allegation that the desire to defeat pension liability is 'a determinative factor' in the challenged conduct", and it is therefore impossible to ascertain the basis for Appellants' argument. Moreover, contrary to Appellants' argument in their Opening Brief, the District Court did not, in fact, hold that Appellants are required to plead that the alleged interference was due solely to the RTS Defendants' desire to curtail ERISA benefits.

Second, it is unclear whether this argument is directed at the RTS Defendants at all. Appellants fail to address the RTS Defendants by name in their argument, and because they fail to cite to their Amended Complaint or to the District Court's Memorandum Opinion, it is impossible to ascertain whether this argument is directed at the RTS Defendants or, if it is, how it supports or even relates to Appellant's position that the District Court's decision should be reversed.

Third, even if the District Court did hold that Appellants are required to plead that interference with Appellants' ERISA rights was the RTS Defendants' "sole" purpose, such a holding does not require reversal of the District Court's decision. Appellants argue that Section 510 only requires that they plead that interference was a "determinative" factor in the conduct at issue, an argument which the RTS Defendants do not challenge. Significantly, however, Appellants are required to do more than plead in their Amended Complaint that interference with the Local 705 Employees' ERISA rights was a determinative factor in RTS' decision to terminate the Local 705 Employees, as such an allegation is merely a legal conclusion which parrots the statutory language contained in ERISA Section 510. *See* Argument Section II(A) at pp. 7-13, *supra*. As discussed above, Appellants are required to plead specific facts stating a plausible claim for relief and, as the District Court held and as the RTS Defendants have

19

demonstrated, Appellants have failed to plead any specific facts in Count I of their Amended Complaint which state a plausible claim for relief. Thus, Appellants' argument that the District Court improperly held that there is no requirement to plead that interference with the Local 705 Employees' ERISA rights was the sole reason for terminating the Local 705 Employees does not support Appellants' request that this Court reverse the District Court's decision, and the District Court's decision should be affirmed.

## III. THE DISTRICT COURT PROPERLY DISMISSED APPELLANTS' ERISA §510 CONSPIRACY CLAIM AGAINST THE RTS DEFENDANTS UNDER RULES 8(A)(2) AND 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE BECAUSE APPELLANTS HAVE FAILED TO STATE A PLAUSIBLE CLAIM FOR RELIEF

### A. Count II Of Appellants' Amended Complaint Fails To Set Forth Any Specific Facts In Support Of Appellants' Legal Conclusion That The RTS Defendants Participated In A Conspiracy To Interfere With The Local 705 Employee's ERISA Rights

The District Court below properly dismissed Count II of Appellants' Amended Complaint because Appellants have failed to plead sufficient facts to state a plausible claim under Rule 8(a)(2) of the Federal Rules of Civil Procedure and under the U.S. Supreme Court's decisions interpreting Rule 8(a)(2) in *Twombly* and *Iqbal*, *supra*. It is axiomatic that the RTS Defendants could not have conspired to violate ERISA Section 510 where, as discussed in Argument Section II, at pp. 7-19, *supra,* there have been no facts pled showing the plausibility of an underlying ERISA Section 510 violation in the first place. Further, like Count I, Count II fails to set forth any factual allegations whatsoever in support of Appellants' conspiracy claim. Rather, Appellants allege in Paragraph 46 of Count II that all of the Defendants-Appellees, including the RTS Defendants, "conspired to deprive Plaintiffs of benefits earned or to be earned under the existing pension, health and welfare plan by firing them and replacing them with workers compensated at lower rates and given lesser pension, health and welfare benefits" (A19

20

at ¶46).   Except for incorporating by reference the first 45 Paragraphs of their Amended

Complaint in Count II, however, Count II contains no additional allegations beyond the

conclusory allegations contained in Paragraph 46 quoted above (A19).   Like Count I, Appellants

fail in Count II to identify any conversations, documents, correspondence, communications or

evidence of any kind supporting their conclusion in Paragraph 46 that the RTS Defendants

conspired with any other party to deprive the Local 705 Employees of their rights under ERISA.

Thus, because Appellants fail to state a plausible claim for relief in Count II of their Amended

Complaint, and for all the reasons discussed in Argument Section II above, the District Court's

dismissal of Count II should be affirmed.

In response to the District Court's decision to dismiss Count II, Appellants argue in their

Opening Brief that "RTS was a sham operator at Corwith", that "RTS went along with the

conspiracy by engaging Local 705 in 'renegotiating' the labor agreement," and that "RTS was a

necessary and willing participant in the Railway's scheme, and therefore a part of the

conspiracy"   (Appellants' Brief at pp. 15-16).   Plaintiffs conclude that these allegations

sufficiently state a claim for conspiracy against the RTS Defendants (Appellants Brief at p. 17-

18).   Appellants' argument in their Opening Brief, however, must be rejected for three reasons.

First, each of the quoted statements above is itself a legal conclusion, and therefore each

statement fails to support Appellants' ultimate conclusion that the RTS Defendants engaged in a

conspiracy.   Merely stating that a conspiracy existed and that RTS was a "necessary and willing

participant" in that conspiracy is simply insufficient under Rule 8(a)(2) of the of the Federal

Rules of Civil Procedure and under *Iqbal, supra*.[7]

---

[7]     Further, contrary to their assertion in their Opening Brief, Appellants do not allege in their
Amended Complaint that "RTS was a sham operator", and they do not cite to any Paragraph in
their Amended Complaint in support of this assertion.

Second, the only conceivable factual assertion Appellants identify in their Opening Brief is that "RTS went along with the conspiracy by engaging Local 705 in 'renegotiating' the labor agreement," yet this assertion has no support in the record (Appellants' Brief at pp. 17-18). Indeed, to the contrary, Appellants allege in their Amended Complaint that BNSF, not RTS, is the entity that "re-negotiated the labor agreement." In Paragraph 31 of their Amended Complaint, Appellants allege that "*the Railroad* demanded wage, health, pension and welfare concessions in excess of $1,000,000 from the Teamsters" (A12 at ¶31) (emphasis added). The only allegation directed at the RTS Defendants regarding the concessions allegedly extracted from Local 705 is the general proposition that the RTS Defendants were somehow "active participants with the Railroad to interfere with the Teamsters [sic] existing pension, health and welfare benefits, that and their conduct assisted TCIU in entering into the Agreement with the Railroad" (A12 at ¶31). As discussed above, however, such an assertion is merely a legal conclusion that is insufficient to withstand a motion to dismiss under *Iqbal*.

Third, even if Appellants did allege in their Amended Complaint that RTS "renegotiated the labor agreement," this allegation simply does not support Appellants' position in their Opening Brief that RTS' purpose in re-negotiating the labor agreement with Local 705 was to interfere with the Local 705 Employees' ERISA rights. Thus, because Appellants have not alleged any facts in support of their legal conclusion that the RTS Defendants conspired to deprive the Local 705 Employees of their ERISA rights, the District Court's dismissal of Count II of Appellants' Amended Complaint should be affirmed.

**B.     Appellants' Argument That "There Is No Support In The Law To Dismiss A Complaint With Prejudice Because There Are Not Enough Facts" Is Wrong And Fails To Require Reversal Of The District Court's Decision**

In their Opening Brief, Appellants argue that the District Court improperly dismissed their Amended Complaint on the grounds that "it omits factual allegations" (Appellants' Brief at

p. 18).  In support of this position, Appellants argue that "a complaint may not be dismissed unless it is impossible to establish a claim under any set of facts", and they conclude that "[f]or the reasons stated throughout this Brief, Plaintiffs-Appellants have more than adequately pled the basis of their claims against Defendants" (Appellants' Brief at pp. 18-19).  Appellants' argument fails to support its position that the District Court's decision should be reversed, however, for two reasons.  First, contrary to Appellants' position, a complaint can be dismissed under Rule 12(b)(6) for "omit[ting] factual allegations" where those omissions constitute a failure to plead a plausible claim for relief under *Iqbal*.  Significantly, Appellants in this regard have only cited to cases pre-dating *Iqbal* in support of their position, and these cases are therefore no longer controlling authority.  Second, as they do throughout their Opening Brief, Appellants fail to cite to any page or section of the District Court's Memorandum Opinion that they are challenging or to any Paragraph of their Amended Complaint in support of their position, and it is therefore impossible to ascertain the basis of Appellants' argument or the support for that argument in the record.  Thus, Appellants' argument fails to support their request that the District Court's decision should be reversed, and that decision should therefore be affirmed.

## IV.    APPELLANTS SHOULD NOT BE GRANTED LEAVE TO FILE A SECOND AMENDED COMPLAINT

In their Opening Brief, Appellants argue that the District Court should have allowed them, generally, to re-plead their Amended Complaint, and that the District Court should have allowed them, more specifically, to plead a Racketeer Influenced and Corrupt Organization Act ("RICO") claim (Appellants' Brief at pp. 19-20).  Appellants' argument, however, should be rejected.  Appellants raise their argument on appeal for the first time, and it is therefore waived. *Local 15, International Brotherhood of Electrical Workers, AFL-CIO v. Exelon Corporation*, 495 F.3d 779, 783 (7th Cir. 2007).  Moreover, the District Court is not obligated to take the

affirmative step of allowing Appellants to re-plead their Amended Complaint when Appellants have failed to make that request of the District Court. *James Cape & Sons Company v. PCC Construction Company et al.*, 453 F.3d 396, 400-401 (7th Cir. 2006). Finally, Appellants did not plead a RICO claim below, did not request leave to plead a RICO claim below, did not raise any potential RICO claim in their response to the motions to dismiss below filed by any of the Defendants-Appellees, and have never even mentioned RICO in any fashion at all until raising it, almost as an afterthought, in their Opening Brief. Thus, as discussed more fully below, Appellants should not be granted leave to file a second amended complaint of any kind, and the District Court's dismissal of Appellants' Amended Complaint should be affirmed.

### A.   Appellants Failed To Request Leave To File A Second Amended Complaint With The District Court Below, And Appellants' Argument That The District Court Should Have Allowed Them To Re-Plead Is Therefore Waived

Appellants' argument that the District Court should have allowed them to file a second amended complaint is waived because Appellants failed to make this argument before the District Court below. *Local 15,* 445 F.3d at 783 (7th Cir. 2007) ("A party waives any argument that it does not raise before the district court… .") (citations omitted). Moreover, Appellants never requested leave of the District Court to file an Amended Complaint at any time, either by motion or in response to Defendants-Appellees' motions to dismiss, or at any other time. Rather than responding to the RTS Defendants' motion to dismiss with a request for leave to file a second amended complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Appellants chose to file a substantive response to that motion, asking that the District Court allow the operative pleading — the Amended Complaint — to stand (A26-45). By responding to the RTS Defendants' motion to dismiss without requesting leave to file a second amended complaint, Appellants abandoned any opportunity to file a second amended complaint before the District Court. *James Cape & Sons*, 453 F.3d at 400-401 (7th Cir. 2006) (district court's decision

to dismiss complaint with prejudice affirmed on appeal where plaintiff-appellant failed to request leave to file an amended complaint with the district court); *Sharp Electronics Corp. v. Metropolitan Life Insurance Co.*, 578 F.3d 505, 512-513 (7th Cir. 2009) (same).  Thus, because Appellants failed to request leave of the District Court to file a second amended complaint and failed to argue before the District Court that leave should be granted to file a second amended complaint, Appellants' request that this Court order the District Court to grant Appellants leave to file a second amended complaint should be denied.

### B.    Appellants Failed To Request That The District Court Below Grant Appellants Leave To Plead A RICO Claim, And Appellants' Argument That The District Court Should Have Allowed Them To Plead A RICO Claim Is Therefore Waived

Like their argument that the District Court should have allowed them to re-plead their interference and conspiracy claims, Appellants' argument that the District Court should have allowed them to plead a RICO claim is waived because it is made for the first time on appeal. *Local 15*, 445 F.3d at 783 (7th Cir. 2007); *Sharp Electronics Corp.*, 578 F.3d at 512-513 (7th Cir. 2009).  In their Opening Brief, Appellants argue that if their conspiracy claim "wasn't sufficient then Plaintiffs-Appellants should have been granted leave to make a RICO conspiracy claim on their Section 510 interference claim… ."  (Appellants' Brief at p. 20).  In support of this position, Appellants' cite to *McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492 (D.NJ, 1985), arguing that since the U.S. District Court for the District of New Jersey allowed the plaintiffs in that case to re-plead a previously pled RICO claim there, this Court should similarly require the District Court to allow Appellants to plead, in the first instance, a RICO claim here (Appellants' Brief at p. 20).

*McLendon* is easily distinguishable from our case, however, and Appellants' argument should therefore be rejected.  In *McLendon*, the plaintiffs' original complaint contained a RICO

claim, and the district court ordered the plaintiffs to amend their complaint to more specifically set forth allegations relating to the fraud component of their RICO claim as required by Rule 9(b) of the Federal Rules of Civil Procedure. *McLendon*, 602 F.Supp. at 1506-1507. In our case, by contrast, Appellants did not include a RICO claim in their original Complaint or in their Amended Complaint, and therefore there is nothing for Appellants to re-plead; rather, unlike the plaintiffs in *McLendon*, Appellants here are asking that they be allowed to plead a brand new claim (and not to clarify a previously pled claim). Additionally, the motions to dismiss here were not brought on the grounds that Appellants failed to plead fraud with the particularity required by Rule 9(b). Rather, the motions to dismiss here were brought on the grounds that Appellants failed to plead a plausible claim for relief under Rule 8(a)(2). Moreover, and as discussed above, Appellants here did not seek leave of the District Court to file a second amended complaint at all, let alone one that included a RICO claim, and they did not argue in their response to any of the Defendants-Appellees' motions to dismiss that leave to add a RICO claim should have been granted. *Sharp Electronics*, 578 F.3d at 513 (7th Cir. 2009). Thus, because the *McLendon* case is distinguishable from our case, and because Appellants failed to seek leave to plead a RICO claim with the District Court below, Appellants' request that this Court order the District Court to grant leave to plead a RICO claim should be denied.

## V. APPELLANTS' AMENDED COMPLAINT WAS PROPERLY DISMISSED AS TO RMS AND CARRIX FOR THE ALTERNATIVE REASON THAT APPELLANTS HAVE FAILED TO ALLEGE SUFFICIENT FACTS DEMONSTRATING THE PLAUSIBILITY OF THE INVOLVEMENT OF RMS AND CARRIX IN RTS' CONDUCT AT ISSUE HERE

Even if the District Court's decision is reversed as to RTS, it should be affirmed as to RMS and Carrix because Appellants have failed to allege sufficient facts demonstrating the plausibility of RMS' and Carrix's involvement in RTS' alleged conduct. First, Appellants fail to develop fully (or to develop at all) their argument on appeal that RMS and Carrix were involved

in the conduct of which RTS is accused here, which is required for a parent corporation to be sued for the actions of its subsidiary.  Second, Appellants have failed to allege in their Amended Complaint sufficient facts demonstrating the plausibility of their involvement in RTS' alleged conduct.  Thus, as discussed more fully below, the District Court properly dismissed Appellants' Amended Complaint as to RMS and Carrix, and that decision should be affirmed.

### A.   Appellants Have Failed To Fully Develop Their Argument On Appeal That RMS And Carrix Should Be Held Liable For RTS' Conduct, And That Argument Is Therefore Waived

In their Opening Brief, Appellants argue that the District Court improperly held that Appellants have failed to adequately allege that RMS and Carrix (which are alleged to be RTS' parent corporations) directly participated in RTS' conduct at issue here (Appellants' Brief at pp. 20-21).  Significantly, however, Appellants have failed to develop this argument as to RMS and Carrix on appeal, and it is therefore waived.  *Trentadue*, 619 F.3d at 654 (7th Cir. 2010).  The discussion in Appellants' argument focuses exclusively on "the Railway defendants," and not on RMS and Carrix.  Indeed, RMS and Carrix are not named or even referenced in that argument at all (Appellants' Brief at pp. 20-23).  Thus, Appellants have failed to develop this argument as to RMS and Carrix on appeal, and the District Court's decision to dismiss RMS and Carrix should therefore be affirmed.

### B.   Appellants Have Failed To Allege In Their Amended Complaint Sufficient Facts Demonstrating The Plausibility Of RMS' And Carrix's Involvement In RTS' Alleged Conduct At Issue Here

Even if Appellants' Amended Complaint was not properly dismissed as to RTS, it was properly dismissed as to RMS and Carrix because there is no allegation that they were involved in the conduct forming the basis of Appellants' lawsuit, and therefore Appellants have failed to state a claim against RMS and Carrix upon which relief can be granted.  It is well-settled that a plaintiff fails to state a claim against an alleged parent company where the only substantive

allegations contained in the plaintiff's complaint are made against the subsidiary, and not the parent. *Jones v. Countrywide Home Loans, Inc.*, 2010 WL 551418 at *3 (N.D. Ill., 2/11/10) (not reported in F.Supp.)  In this regard, an alleged parent and its subsidiary are "two separate entities and the acts of one cannot be attributed to the other." *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000).  Moreover, a plaintiff who seeks to pierce the veil between a parent and a subsidiary must show that one corporation is merely "a dummy or sham for another." *APS Sports Collectibles, Inc. v. Sports Time, Inc.,* 299 F.3d 624, 631 (7th Cir. 2002).

Appellants' Amended Complaint was properly dismissed as to RMS and Carrix because Appellants fail to allege any facts that RMS and Carrix engaged in any unlawful conduct. Rather, Appellants allege in Paragraph 15 of their Amended Complaint that "RTS is a subsidiary of Defendant Rail Management Services" and that Carrix "is the parent to both RTS and RMS" (A8 at ¶15).  Significantly, however, these allegations, standing alone, are insufficient to state a claim against RMS and Carrix, and Appellants fail to plead any other facts that RMS and Carrix were involved in any of the unlawful conduct alleged in Appellants' Amended Complaint.  Thus, even if Appellants' Amended complaint was not otherwise properly dismissed as to the RTS Defendants, it was properly dismissed as to RMS and Carrix for failure to state a claim.

## CONCLUSION

Defendants-Appellants RTS, RMS and Carrix respectfully request that this Honorable

Court affirm the District Court's dismissal of Appellant's Amended Complaint, with prejudice.

Respectfully submitted,


/s/Clifford R. Perry III
Clifford R. Perry III, One of the Attorneys for
Defendants-Appellees Rail Terminal Services,
Inc., Rail Management Services, LLC and
Carrix, Inc.

Clifford R. Perry III (06204955)
Laner, Muchin, Dombrow, Becker,
  Levin and Tominberg, Ltd.
515 North State Street - Suite 2800
Chicago, Illinois  60654
(312) 467-9800 Phone
(312) 467-9479 Fax

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), as modified by Circuit Rule 32(b), and the type of style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced serif typeface using Microsoft Office Word 2010 in 12-point Times New Roman font.

Dated:  August 15, 2012

/s/Clifford R. Perry III
Clifford R. Perry III

## CERTIFICATE OF SERVICE

Pursuant to Circuit Rule 25, Clifford R. Perry III, an attorney, hereby certifies that he caused the foregoing Brief of Defendants-Appellees Rail Terminal Services, Inc., Rail Management Services, LLC and Carrix, Inc. in the above-captioned matter to be filed with the Clerk of the United States Court of Appeals for the Seventh Circuit and served on the parties of record in this case, through the Court's electronic filing service before the hour of 5:00 p.m. this 15th day of August, 2012, and that all participants in this case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF system upon the following counsel:

Nicholas C. Kefalos
Verner Moran, LLC
27 North Wacker Drive, Suite 2000
Chicago, IL 60606-2800

Jeffrey Andrew Bartos
Guerrieri, Clayman, Bartos & Parcelli, P.C.
1625 Massachusetts Ave.,, N.W.
Suite 700
Washington, DC 20036

Donald J. Munro
Jones Day
51 Louisiana Ave. NW
Washington, DC 20001-2113


/s/Clifford R. Perry III
Clifford R. Perry III